EARL MORRELL, Respondent, v. NORTHERN PACIFIC RAILWAY COMPANY, a Foreign Corporation, and Walker D. Hines, Director General of Railroads of the United States, Appellant.

(179 N. W. 922.)

In an action brought against a carrier to recover damages for the failure to deliver to the consignee at Chicago certain live stock which the plaintiff loaded for shipment at Killdeer, North Dakota, where the evidence showed that the cattle delivered were not the cattle originally loaded, but were of inferior grade, and less valuable, the defendants introduced no evidence. It is held:

Pleading — omission of shipper to allege reliance on special shipping contract held cured by carrier's answer setting up such contract.

1. Where the complaint recites delivery to the defendants under a contract, shipping receipt, or bill of lading, but does not allege the failure of the defendants to deliver as a breach of the shipping contract, and the defendants plead the shipping contract in their answer, the omission, if any, of allega-

NOTE.—Notwithstanding the stipulation in a written contract that the owner or person in charge of stock shall give notice in writing of his claim thereof, to some officer of the railroad or its nearest station agent, it is held that, where there has been no delivery of the property, a stipulation for the presentation of a claim for damages within a certain time is not applicable, as will be seen by an examination of a note in 31 L.R.A. (N.S.) 1180, on applicability in case of non-delivery of provision in shipping contract requiring presentation of claim for damages.

On liability of Director General of Railroads to statutory penalty for delay in shipments, see note in 8 A.L.R. 978.

tions showing reliance upon a special shipping contract is cured by the answer.

**Carriers — requirements of written notice within ninety days after delivery of stock held inapplicable in suit for nondelivery.**

2. The provision in a shipping contract which requires the shipper, as a condition precedent to the right to recover damages for delay in transit or for loss or injury to the stock, to give notice in writing of his claim to some officer or station agent of the defendant "within ninety days after delivery of such stock at destination," is not applicable where it appears that the stock was never delivered at destination, and the damages claimed are based upon its nondelivery. (U. S. Comp. Stat. § 8604.)

**Carriers — liability for nondelivery of stock not qualified to contract recital that shipper would care for stock.**

3. Where the agent of a carrier knows that neither the plaintiff nor any agent of his is accompanying live stock being transported by it, its liability for nondelivery is not qualified by provisions in the contract which recite that the shipper will care for the stock and furnish attendants.

**Carriers — unrebutted proof as to delivery to carrier and nondelivery of stock to consignee held to create presumption of negligence.**

4. Where the plaintiff proved delivery of live stock to the defendants and its nondelivery to the consignee, also the delivery of other and inferior stock in purported fulfilment of the shipping contract, a presumption of negligence arose which, being unrebutted, entitled the plaintiff to a recovery.

**Carriers — instruction that carrier was liable only for negligence in action for nondelivery properly refused.**

5. It was not error to refuse an instruction that the defendants, under their shipping contract, were only liable for negligence, where no evidence had been introduced to overcome plaintiff's prima facie case, or to warrant a finding by the jury that the defendants were not negligent.

**Carriers — evidence of value of cattle at point of shipment held admissible, although damages for nondelivery measured by value at destination.**

6. Where the testimony concerning the value of cattle at Killdeer, North Dakota, is shown to have been based upon a knowledge of the Chicago market, it was not error to admit testimony of the value at Killdeer, though the damages are properly measured by the value at Chicago.

**Railroads — road under Federal control not liable for damages to shipment.**

7. Where a shipper sustained loss or damage to freight carried over a railroad during the period of Federal control, the railway company is not liable.

**Appeal and error — failure to dismiss as to railroad company held not prejudicial error as to Federal railroad administration.**

8. Where no motion for dismissal as to the railway company was made until

the close of the plaintiff's case, and where no facts appear in the record showing that the defendant railroad administration was denied a fair trial by reason of the joinder of the railway company as defendant, failure to dismiss the action as to the railway company is not prejudicial error requiring a reversal as to the Federal railroad administration.

Opinion filed October 25, 1920. .

Separate appeals by the Northern Pacific Railway Company and Walker D. Hines, Director General of Railroads, from District Court of Dunn County, *F. T. Lembke*, J.

Reversed as to the Northern Pacific Railway Company and affirmed as to the Federal Railroad Administration.

*Young, Conmy, & Young*, for appellant.

In an action against a carrier for loss of goods, the failure of the declaration to allege compliance with a provision of the bill of lading requiring notice of claim for injuries renders the declaration subject to demurrer. Williamsport Lumber Co. v. B. & O. R. Co. 77 S. E. 333; Cooke v. N. P. R. Co. 22 N. D. 266.

The rules and regulations, duly published and filed, which in any wise affect the rates or the value of the service to be rendered, are controlling upon both parties to the shipping contract. Kansas City Southern R. Co. v. Carl, 227 U. S. 639, 652; Boston & M. R. Co. v. Hooker, 233 U. S. 97, 112; Louisville & N. R. Co. v. Maxwell, 237 U. S. 94, 98; Great Northern R. Co. v. O'Connor, 232 U. S. 508, 515; Pierce Co. v. Wells, F. & Co. 236 U. S. 278, 285.

There was a complete failure to show compliance with the terms and conditions of the shipping contract, particularly with paragraph V., relating to written notice. Cooke v. N. P. R. Co. 22 N. D. 266; St. Louis R. Co. v. Starbird, 243 U. S. 592; Kalma v. N. P. R. Co. 76 Pac. 438; Georgia R. Co. v. Blish Mill. Co. 241 U. S. 190.

*T. F. Murtha* (*T. H. Thorson*, of counsel), for respondent.

The complaint sets out an action upon the shipping contract, and need not allege that "the plaintiff has complied with all the terms and conditions of the contract on his part to be kept and performed." 31 Cyc. 763 to 778; Zenia Real Estate Co. v. Macy (Ind.) 47 N. E. 147.

Giving of the notice is not a condition precedent, and need not be

alleged. Comp. Laws 1913, § 7461; Hatch v. Railroad, 15 N. D. 490; 31 Cyc. 107; Root v. Childs (Minn.) 70 N. W. 1087.

The carrier must feed and water live stock notwithstanding a contract requiring the shipper to do so, where shipper does not accompany the stock. 10 C. J. 96, § 109, notes 52–56.

Under Federal Railroad Control Act, § 10 (U. S. Comp. Stat. § 3115¾j), authorizing actions to be brought against carriers as provided by law, action could be brought against the carrier in its corporate name, and general order No. 50 of the Director General, requiring actions to be brought against the Director General, is invalid. Gowan v. McAdoo (Mich.) 173 N. W. 440; West v. Ry. (Mass.) 123 N. W. 621; Franke v. Ry. (Wis.) 173 N. W. 701.

## On Rehearing.

BIRDZELL, J. This is an action brought by a shipper to recover damages of the defendants for their failure to deliver to the consignee at Chicago certain live stock which the plaintiff loaded for shipment at Killdeer, North Dakota. The proof shows that on September 19, 1918, the plaintiff shipped from Killdeer 24 head of cattle, 21 steers, and 3 heifers, in car No. 84,945. When this car reached Chicago several days later, it did not contain the stock originally loaded in it, but it did contain some 22 cows and 22 calves. It appears that these were sold by the commission company, to which the plaintiff had consigned the stock originally contained in the car, and the net proceeds, amounting to $1,650.49, were remitted to the plaintiff. The stock which plaintiff had loaded in the car was of much higher grade and more valuable than that contained in the car when it reached Chicago. The jury, in its verdict, has given defendants credit for the amount received by the plaintiff as proceeds of the sale of the inferior stock which admittedly belonged to somebody else. The difference in the value of the cattle delivered to the carrier and those delivered at the destination represents the damages which were awarded by the jury in the sum of $2,750. The defendants introduced no evidence at the trial, and upon this appeal they rely upon errors which will be considered below.

It is first contended that the action should have been dismissed for the reason that the proof showed the shipment to have been made under

the terms and conditions of a special contract, which was not alleged in the complaint. It is claimed in support of this contention that the complaint is predicated upon the common-law liability of the carrier, whereas the proof shows that the liability, if any, was for breach of the special contract. In this connection, too, may be considered the contention advanced by the appellant, that the action should have been dismissed for the failure of the plaintiff to show compliance with the terms and conditions of the same contract.

In the complaint the plaintiff alleged the delivery of the stock to the defendant company as a common carrier, "and that the defendant railway company on that date at Killdeer, North Dakota, undertook and agreed, for a consideration thereafter to be paid, to so transport said live stock over its lines of railroad and over the lines of its connecting common carriers, and issued to the plaintiff its contract, shipping receipt or bill of lading, whereby the defendant railway company became liable to the plaintiff for any loss or damage to said stock during such transportation, and for failure to deliver said stock to said consignee. . . ."

The failure to deliver is not alleged in the complaint as a breach of the shipping contract, but it is nevertheless alleged. In their answer, the defendants, among other things, plead that the cattle were received and transported under the terms and conditions of the special written contract, a copy of which is made a part of their answer. Elsewhere in the answer, defendants set forth and rely specifically upon one of the provisions of the contract. From these references to the pleadings, it will readily be seen that, even if the complaint were considered deficient in allegations showing reliance upon the special contract of carriage, the omission is rendered entirely immaterial by the answer which specifically admits that the shipment was made under the special contract. The omission, if any, is wholly cured by the answer. Phillips, Code Pl. § 84; Bliss, Code Pl. 2d ed. § 437; Pom. Code Rem. 4th ed. § 575; Heffernan v. Supreme Council, A. L. H. 40 Mo. App. 605; Price v. Patrons' & F. Home Protection Co. 77 Mo. App. 236; Whitley v. Southern R. Co. 119 N. C. 724, 25 S. E. 1018. As this special contract was in evidence, there was clearly no failure of proof in the sense contended for under the appellants' first point.

Since, in our consideration of this case, we shall regard the right of

the plaintiff to recover under the pleadings and proof as being depend-
ent upon the contract, the case of Cooke v. Northern P. R. Co. 22 N.
D. 266, 133 N. W. 303, and 32 N. D. 340, L.R.A.1916D, 345, 155 N.
W. 867, relied upon by the appellants, is not deemed applicable.

The appellants contend that the action should have been dismissed
for the failure of the plaintiff to allege and prove notice of his claim
within ninety days in accordance with the stipulation in the contract.
It is pointed out that the shipment was an interstate shipment, and con-
trolled by the acts of Congress so far as applicable (Adams Exp. Co. v.
Croninger, 226 U. S. 491, 57 L. ed. 314, 44 L.R.A.(N.S.) 257, 33
Sup. Ct. Rep. 148; Missouri, K. & T. R. Co. v. Harriman, 227 U. S.
657, 57 L. ed. 690, 33 Sup. Ct. Rep. 397; Northern P. R. Co. v. Wall,
241 U. S. 87, 60 L. ed. 905, 36 Sup. Ct. Rep. 493; 10 C. J. 136, 140),
and that the stipulation in question with reference to notice is one spe-
cifically authorized by § 8604a, Comp. Stat. 1918.   The stipulation
reads:

"As a condition precedent to the shipper's right to recover any dam-
ages for delay in transit or for loss or injury to any of the stock, the
shipper must give notice in writing of his claim therefor to some officer
or station agent of the company within ninety days after delivery of
such stock at destination."

This court, in the case of Hatch v. Minneapolis, St. P. & S. Ste. M.
R. Co. 15 N. D. 490, 107 N. W. 1087, held that it was not incumbent
on the plaintiff, in the first instance, to either allege or prove the giv-
ing of notice for which the shipping contract provided.   The shipping
contract in that case, in regard to notice, was quite similar to the pres-
ent one.

It is contended that, in view of the decisions of the United States
Supreme Court with reference to the waiver by carriers of the benefit
of stipulations in shipping contracts, the rule of the Hatch Case, supra,
can no longer stand.   The decisions referred to firmly establish the
rule that the waiver would amount to discrimination among patrons,
and as such is prohibited and void.   See Chicago & A. R. Co. v. Kirby,
225 U. S. 155, 56 L. ed. 1033, 32 Sup. Ct. Rep. 648, Ann. Cas. 1914A,
501; Phillips Co. v. Grand Trunk Western R. Co. 236 U. S. 662, 59
L. ed. 774, 35 Sup. Ct. Rep. 444; Georgia, F. & A. R. Co. v. Blish Mill.
Co. 241 U. S. 190, 60 L. ed. 948, 36 Sup. Ct. Rep. 541; Missouri, K.

& T. R. Co. v. Ward, 244 U. S. 383, 61 L. ed. 1213, 37 Sup. Ct. Rep. 617; Baltimore & O. R. Co. v. Leach, 249 U. S. 217, 63 L. ed.. 570, 39 Sup. Ct. Rep. 254. We do not find it necessary to determine in this case whether the rule in the Hatch Case can be reconciled with the decisions last referred to. It is clear, however, that if it can be reconciled, the case must be held to go no further than to prescribe rule of procedure rather than a rule of substantive law.

The stipulation before us requires the giving of notice of claim within ninety days "after delivery of such stock at destination." From the facts established beyond dispute it appears that the stock covered by the contract was never delivered at destination, and that the recovery is based upon its nondelivery. The purpose of such a provision is doubtless to enable the carrier to investigate claims while the evidence is fresh, and thus to afford a means of protection against fraudulent and exaggerated claims. That it was not intended to shield carriers from liability occasioned by their negligence may well be inferred from the provisions of § 8604a, U. S. Comp. Stat. which recognizes not only the right of carriers to require ninety days' notice of claim, but which further provides that "if the loss, damage, or injury complained of was due to delay or damage while being loaded or unloaded, or damaged in transit by carelessness or negligence, then no notice of claim nor filing of claim shall be required as a condition precedent to recovery."

In the instant case it appears prima facie that the loss of the cattle was due to negligence, and it would, therefore, seem to be a case controlled by the proviso above quoted, wherein the carrier is prohibited from requiring notice as a condition precedent to recovery.

In addition to this, it seems well settled that stipulations which limit the time for filing notices from the delivery of the property at destination are not applicable where the property is never delivered. See 10 C. J. § 487, p. 335; 4 Elliott, Railroads, § 1526; 4 R. C. L. 991; Southern R. Co. v. Webb, 143 Ala. 304, 111 Am. St. Rep. 45, 39 So. 262, 5 Ann. Cas. 97; Merchants & Miners Transp. Co. v. Moore, 124 Ga. 482, 52 S. E. 802, 19 Am. Neg. Rep. 138; Cleveland, C. C. & St. L. R. Co. v. C. & A. Potts & Co. 31 Ind. App. 564, 71 N. E. 689; Sheldon v. New York C. & H. R. R. Co. 61 Misc. 274, 113 N. Y. Supp. 676; Patterson v. Missouri, K. & T. R. Co. 24 Okla. 747, 104 Pac. 31; Tolmie v. Michigan C. R. Co. 19 Ont. L. Rep. 26–29. For these reasons

we are of the opinion that compliance with the stipulation requiring notice was not a condition precedent to the plaintiff's right of recovery.

It is contended that the plaintiff cannot recover, because his brother and agent, Jesse Morrell, in entering into the shipping contract on his behalf, signed the plaintiff's name in the blank on the back of the contract, intended to identify any person or persons accompanying the stock in transit. The contract provides that the shipper will care for the stock while in possession of the company and will furnish one or more attendants; that if the shipper fails to furnish one or more attendants, anything done by the company with respect to the care of the stock shall be considered as done at the shipper's request and as his representative. The evidence shows that the carrier knew that no one was accompanying the shipment. It was, therefore, not relieved of its duties with respect to the care of the stock. 6 Cyc. 438; 10 C. J. 109; 4 R. C. L. 982. The failure of the shipper to comply with this provision clearly does not make the act of the carrier in delivering the stock to the wrong person or in converting it to its own use, the act of the shipper. It was still charged with performing its duty as a carrier and of making delivery under the contract.

It is also contended that the instructions were prejudicial in that the court charged the defendants with liability as insurers, and refused proffered instructions to the effect that the defendants were not insurers, but only liable for negligence. It must be borne in mind that the plaintiff proved the delivery of the stock to the defendants and its nondelivery at destination, and that no evidence was introduced by the defendants. Neither in the cross-examination of the plaintiff's witnesses were any facts adduced that would explain in any manner the failure of the defendants to deliver the plaintiff's stock at destination. From proof of such facts a presumption of negligence arises, and, though this presumption be one of fact and rebuttable, the jury, under the state of the evidence offered, would not have been justified in drawing any other inference. So, if full effect be given the stipulation in the shipping contract, whereby the liability of the carriers is limited to negligence, it does not follow that error was committed in refraining from instructing the jury that they could not find for the plaintiff unless they found the defendants to have been negligent. There was no evidence to over-

come the presumption of negligence arising upon the plaintiff's proof. The error, if any, was not prejudicial. As said in 10 C. J. 247:

"The custody of the goods being shown to have been in the carrier, and their loss or the failure to produce them being established, the burden of showing that there was no negligence, or at least of explaining the loss in a manner not prima facie negligent, is usually held to rest on the carrier. . . . The presumption of negligence raised by a proof of failure to deliver goods on demand is not rebutted by mere proof that the goods cannot be found without any affirmative explanation of their disappearance. Ordinarily, the question of negligence is for the jury; but where there is no dispute as to the facts, the question of whether the goods have been properly cared for may become one of law." See also 4 R. C. L. 993.

Errors are assigned upon the admission of evidence bearing upon the measure of damages. Various witnesses testified to the value of the stock at Killdeer, North Dakota, and it is claimed that the proper measure of damages is the value at Chicago. The plaintiff should have proved the value at Chicago. From a reading of the testimony, however, it appears that the value at Killdeer, as testified to, was based upon the Chicago market. In the absence of a showing that the market had declined between the date of shipment and the date delivery should have been effected under the contract, the defendants were not prejudiced by the testimony which established the value at Killdeer. We cannot assume that they were prejudiced. Consequently, there is no merit in this contention.

At the close of the case, the attorney for the defendants moved to dismiss the action as to the Northern Pacific Railway Company on the ground that the company was not operating its railroad at the time, the same being under Federal control. For the reasons stated in McGrath v. Northern P. R. Co. ante, 303, 177 N. W. 383, this motion should have been granted. It is contended, however, that a new trial should be awarded the defendant Walker D. Hines, Director General of Railroads of the United States, on the ground that the defense of the government was prejudiced by reason of the failure to dismiss the action as to the Northern Pacific Railway Company. It does not appear that any motion for substitution was made under order No. 50 of the Federal Railroad Administration, nor that the trial preliminary to the ver-

dict was in any way prejudiced or hampered by reason of the Northern Pacific Company being joined as a defendant. No substantial reason is assigned or facts stated from which we can say that the defendant railroad administration has been prejudiced by the joinder of the railway company. The judgment will, therefore, be affirmed as to the latter defendant, and the action dismissed as to the Northern Pacific Railway Company. It is so ordered.

CHRISTIANSON, Ch. J., and ROBINSON, J., concur.

BRONSON, J. I concur in result.

GRACE, J. (dissenting). The action is one against the defendant for conversion of certain ordinary live stock intrusted to it for shipment to a company at Chicago. The facts are quite fully stated in the majority opinion, and need not be restated here.

The shipment was made under a particular contract. The complaint, as well as the answer, pleads a contract. The contract offered in evidence is the contract upon which the shipment was made. It is the one relied upon by the plaintiff as well as the defendant.

The rights of the parties were fixed by the written contract and by the Commerce Act. One of the provisions of the written contract, relied upon by defendants to defeat recovery, provides:

"As a condition precedent to the shipper's right to recover any damages for delay in transit, or for loss or injury to any of the stock, the shipper must give notice in writing of his claim therefor, to some officer or station agent of the company, within ninety days after delivery of such stock at destination."

Section 8604a, U. S. Comp. Stat. provides "that it shall be unlawful for any such common carrier to provide, by rule, contract, regulation, or otherwise, a shorter period for giving notice of claims, than ninety days, and for the filing of claims, for a shorter period than four months, and for the institution of suits, than two years; provided, however, that, if the loss, damage, or injury complained of was due to delay or damage, while being loaded or unloaded, or damaged in transit, by carelessness or negligence, then, no notice of claim, nor filing of claim, shall be required as a condition precedent to recovery."

It is conceded that this is an interstate shipment, and that the whole transaction was interstate commerce, and one controlled by the acts of Congress, as far as they have application thereto. From this, it must necessarily follow that the construction of the bill of lading is a Federal question.

In this case, there was no notice of claim of loss or damage, or of failure to deliver, or of misdelivery, given the defendant, as required by the bill of lading or contract, between the parties, nor is there any proof that a claim was filed therefor within four months.

The proof of notice required to be given within ninety days is, as we view the matter, a condition precedent, which the plaintiff must allege and prove, before he may maintain an action to recover for the damages alleged to have been sustained by him. That was a condition agreed to by him in the contract, and it was one authorized by the law under consideration. It was a term of the contract, which could not be waived either by him or the defendant; and one which could not be ignored by either.

The responsibility of carrier is that fixed by the agreement made under the authorized and published tariffs, and under the regulations and requirements in § 8604a, and Commerce Laws amendatory thereof.

This must be true, or otherwise opportunity would exist for discrimination, one of the abuses intended to be corrected. This is virtually the conclusion which is reached by the Supreme Court of the United States in the case of Georgia F. & A. R. Co. v. Blish Mill. Co. 241 U. S. 197, 60 L. ed. 952, 36 Sup. Ct. Rep. 541.

In that case the court, speaking through Justice Hughes, discussing the requirement of notice of claim, said: "It is not to be doubted that if, in the case of an interstate shipment, under a through bill of lading, a terminal carrier makes a misdelivery, the initial carrier is liable; and when it inserts in its bill of lading a provision requiring reasonable notice of claims "in case of failure to make delivery," a fair meaning of the stipulation is that it includes all cases of such failure, as well those due to misdelivery as those due to the loss of the goods."

And the court, further, there said:

"The parties could not waive the terms of the contract, under which the shipment was made pursuant to the Federal act; nor could the car-

rier, by its conduct, give a shipper the right to ignore these terms, which were applicable to that conduct, and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariffs and regulations.

"A different view would antagonize the plain policy of the act, and open the door to the very abuses at which the act was aimed."

In the majority opinion, the case of Hatch v. Minneapolis, St. P. & S. Ste. M. R. Co. 15 N. D. 490, 107 N. W. 1087, is relied upon to sustain the conclusion at which they have arrived. It is apparent, upon the most casual examination of the decision in that case, that the conclusion there is diametrically opposed to the purpose and intent of that part of the Commerce Act above set forth.

If the rule in the Hatch Case is correct, then the requirements of the Federal act, as to notice and filing of claims, and the time within which to bring an action, are of no real force nor effect, either as expressed in the act, or as incorporated into a contract based upon its provisions, and hence the door would thereby be opened to all abuses sought to be prevented by the act; that is, a carrier, though it could not give a favorite shipper a different rate than that prescribed by the published tariffs, as fixed by the Interstate Commerce Commission, it could recognize damages claimed to have been suffered by such shipper, in a substantial amount, when no great amount of damage had been suffered; and if there were no formal notice or statement of amount of claim required to be filed with the carrier, there would be nothing in the carrier's records from which it might be ascertained whether the claim was legitimate or not, and thus the opportunity is afforded the favorite shipper, of receiving, in effect, a rebate. This procedure, if carried on to any considerable degree, must necessarily result in other shippers paying a higher rate; in short, result in discrimination among shippers.

It may be true, as stated in the Hatch Case, that the notice required is not a part of the cause of action; and that the cause of action is complete before the condition becomes operative, but, in this case, it was necessary to serve the notice of claim pursuant to the act and the contract based upon it, before the court acquired jurisdiction.

It is a condition precedent to the bringing of an action, which must be observed, and this, upon the broad ground of public policy, to prevent discrimination and rebating among shippers.

It should also be remembered that the Hatch Case was decided prior to the time when the Carmack Amendment became effective. If this court follows the rule in that case, it appears to us it will be in the same position on principle as that stated by the Supreme Court of the United States in the case of Atchison, T. & S. F. R. Co. v. Robinson, 233 U. S. 173, 58 L. ed. 901, 34 Sup. Ct. Rep. 556. There, the court, in the syllabus, said: "A decree of a state court, denying to the defendant the benefit of a Federal statute, compliance with which was set up in the answer, and supported by testimony tending to show the truth of the allegations thereof, is an adverse ruling on a Federal right, which, under the Judicial Code, § 237 (36 Stat. at L. 1156, chap. 231, U. S. Comp. Stat. § 1014, 5 Fed. Stat. Anno. 2d ed. p. 723), warrants bringing the case up to the Federal Supreme Court by a writ of error."

And so we are convinced, in this case, that the adherence to the rule in the Hatch Case is a denial of defendant's rights, under Federal act, and the interpretation thereof, as contained in Georgia, F. & A. R. Co. v. Blish Mill. Co. supra.

In this case, it was no hardship for plaintiff to have complied with the contract and the requirements of the act. If he had pleaded and proved that he had served a proper notice upon any agent of the defendant (and there are thousands of them, and many near at hand where plaintiff resided), and had proved that he had filed a claim, the judgment which he has recovered might then properly be affirmed; but that was not done, and we think, for that reason, the judgment cannot stand.

It is evident that, if such notice and proof is not required, then the act becomes ineffective, and public policy, which is its basis, is entirely disregarded; and the abuses abolished by it will again rise and flourish.

In the construction of this law, we must apply one rule or the other. Either the one requiring pleading and proof of notice, which leads to order, uniformity of treatment of shippers, and the sustaining of the sound public policy of the act, or we must take the other, where pleading and proof of notice is immaterial, which leads to chaos, favoritism, discrimination, and rebating, and the throwing down of the sound public policy of the act.

The act is Federal. The legal construction of it has been ascertained

and enunciated by the highest Federal judicial authority. I feel that our position is in harmony with that authority.

We think, for the reasons above stated, and for those reasons only, the trial court should have directed a verdict for the defendant. We think the judgment appealed from should be reversed, and the case remanded for a new trial.