P. J. JACOBSON and Charles Dunn, Copartners Doing Business as Jacobson and Dunn, Respondents, v. A. HORNER, Appellant.

(193 N. W. 327.)

**Pleading — complaint assailed for first time at trial, as failing to state cause of action by objection to evidence, liberally construed.**

1. A complaint assailed for the first time at the trial by an objection to the introduction of evidence on the ground that the complaint fails to state facts sufficient to constitute a cause of action will be liberally construed.

**Pleading — complaint in action by seller to recover damages for non-acceptance held good as against general objection to evidence as not stating cause of action.**

2. In the instant case, a complaint in an action by the seller against the buyer to recover damages for nonacceptance of goods *held* not vulnerable to such general objection.

**Sales — measure of damages for buyer's breach of contract for purchase of personal property states.**

3. In an action by the seller against the purchaser of personal property for damages for nonacceptance of such property, the seller is entitled to recover such damages as naturally resulted from the purchaser's refusal to carry out the contract, that is, the measure of damages is the estimated loss directly and naturally resulting in the ordinary course of events, from the buyer's breach of contract. (Uniform Sales Act, Laws 1917, § 64, chap. 202.)

**Sales — measure of damages for breach of contract to buy personal property where available market for goods states; method of determining damages for breach of contract to buy personal property where no available market for goods stated.**

4. Where there is an available market for the goods in question, the measure of damages is, in the absence of special circumstances showing proximate damage of a greater amount, the difference between the contract price and the market price or current price at the time or times when the goods ought to have been accepted or, if no time was fixed for acceptance, then at the time of the refusal to accept (Uniform Sales Act, Laws 1917, § 64, chap. 202) where there is no available market at the place where the goods ought to have been accepted, then, for the purpose of computing damages for breach of contract occasioned

Note.—The general rule seems to be that where a vendee ·of personal property refuses to accept it the vendor may resell it, taking proper measures to secure as fair and favorable sale as possible, and the difference between the contract price and the proceeds of the sale will be the proper measure of damages for breach of the contract of sale, in the absence of other evidence upon the subject, as will be seen by an examination of the cases collated in notes in 52 L.R.A. 249; 42 L.R.A. (N.S.) 680. See also 24 R. C. L. p. 114.

by the refusal of the buyer to accept and pay therefor, the market value may ordinarily be ascertained by taking the value at the nearest available market, less the cost of delivery at such market.

**Appeal and error — may be restricted to question affected by error.**
5. Where the error committed upon the trial of an action relates solely to a question which is separable from the other issues determined by the first verdict, the new trial may be restricted solely to the question affected by the error.

Opinion filed April 7, 1923.   Rehearing denied April 30, 1923.

Appeal and Error, 4 C. J. § 3234 p. 1194 n. 86, p. 1195 n. 90; Pleading, 31 Cyc. p. 82 n. 11, p. 759 n. 93; Sales, 35 Cyc. p. 591 n. 41, 42; p. 592 n. 53; p. 594 n. 57; p. 599 n. 4.

Appeal from the District court of Emmons County, *McKenna,* J.

Defendant appeals from a judgment and from an order denying a motion for judgment notwithstanding the verdict or for a new trial.

Reversed and remanded for a new trial on the issue of damages alone.

*Lynn & Lynn,* and *Scott Cameron,* for appellant.

*E. T. Burke,* for respondent.

CHRISTIANSON, J.   This action involves a contract for the sale of cattle.   In their complaint the plaintiffs allege:   That plaintiffs are copartners; that the defendant is engaged in the business of buying, shipping, and selling cattle; that at the times mentioned one J. A. Horner, a son of the defendant, was defendant's agent, authorized to purchase cattle for him and in his name and to issue checks in defendant's name upon his account in the Farmers State Bank of Linton; "that on or about the 27th day of August, 1919, the said defendant acting by and through his agent J. A. Horner bought from the plaintiffs herein ten cows and sixty-one steers and then and there agreed to pay to the order of these plaintiffs the sum of nine thousand dollars ($9,000), of which sum $200 was to be in cash and the balance was to be paid to the plaintiffs from the proceeds of said cattle as soon as they were shipped by the defendant, which was to be within a period of ten days.   That in pursuance of said contract, said defendant through his agent aforesaid caused to be executed and delivered to this plaintiff two certain checks in words and figures as follows, to wit:

Linton, N. Dak., Aug. 27, 1919.

FARMERS STATE BANK

Pay to——Charley Dunn——or order——$100.00.

A. Horner,

By H. A. H.

Linton, N. Dak., Aug. 27, 1919.

FARMERS STATE BANK

Pay to——P. J. Jacobson or order——$100.00.

One Hundred and no/100ths dollars——

A. Horner,

By H. A. H.

"That shortly thereafter the price of cattle in the open market declined and the said defendant in violation of his contract wrongfully refused to pay the balance due upon said contract and refused to take the cattle from the premises of the plaintiffs according to his agreement and notified the plaintiffs that he would not further abide by the said contract, and went to the said Farmers State Bank at Linton, North Dakota, and ordered it to stop payment upon said checks; that pursuant to said order, the said Farmers State Bank of Linton, North Dakota, dishonored said checks and the plaintiffs were obliged to pay the sum of six & 20/100ths ($6.20) dollars protest fees thereon. That immediately upon being notified by the defendant of his refusal to abide by the contract, the plaintiffs proceeded to sell said cattle for the benefit of the said defendant and obtained therefor the highest obtainable market price at said date which was the sum of $7,000 which these plaintiffs have credited upon the said account. That plaintiffs have demanded and caused to be demanded of the defendant the payment of the balance due upon the purchase price aforesaid prior to the commencement of this action, but defendant has refused and still refuses to pay the same or any part thereof." The prayer for judgment was for $2,000 and interest and costs. The answer consisted of general and specific denials, placing all of the averments of the complaint in issue.

The case was tried to a jury upon the issues thus framed. After the jury had been empaneled and sworn to try the case and the first witness placed upon the stand to testify the defendant made a general objec-

tion to the introduction of any evidence on the ground that the complaint did not state facts sufficient to constitute a cause of action. The objection was overruled.

The evidence adduced by the plaintiffs was to the effect that on August 27, 1919, they sold seventy-one head of cattle to J. A. Horner, as agent of the defendant, for the sum of $9,000, and received from him the two checks set out in the complaint. Shortly prior to this, the plaintiffs had ordered cars for the purpose of shipping their cattle to market. Upon making the sale to defendant, they canceled the orders for cars. At the time of the transaction between said J. A. Horner and plaintiffs, he (J. A. Horner) stated that his father would be over in three or four days and take the cattle and pay the balance due plaintiffs on the contract. · On or about September 1, 1919, the defendant did come over and he went out and examined the cattle. There is a square conflict in the evidence as to what was said between the parties while he was there, but it is undisputed that he was unwilling to take the cattle at the price agreed upon. The defendant claimed throughout the entire trial that J. A. Horner was not his agent, and had no authority to purchase cattle in his own name, or draw checks on his account in payment thereof. The evidence adduced by the plaintiffs was to the effect that after defendant refused to take the cattle they ordered cars and shipped the cattle to Chicago as soon as possible, and that the cattle were sold in the usual and open cattle market in Chicago, and that plaintiffs received therefor slightly less than $7,000.

At the close of plaintiffs' case and again at the close of all the evidence, defendant moved for a directed verdict on the following grounds: That there is a material and fatal variance between the cause of action alleged and the facts proven, and that upon the facts proven the plaintiff has shown no right of recovery; that the facts proved show that the right of recovery, if any, was a personal right, and not a partnership right; that there has been no notice of intention to rescind the contract by the seller after the repudiation by the buyer and before the resale, as required by the Sales Act of 1917; that the complaint does not state a cause of action; that there is no evidence to substantiate the allegation of partnership of the plaintiffs; that there has been no evidence admitted which could justify a verdict for the plaintiffs. The motion was denied, and the cause submitted to the jury. The jury returned

a verdict in favor of the plaintiffs for $2,000. Defendant moved for judgment notwithstanding the verdict, or for a new trial. The motion was denied, and defendant has appealed.

It is well to state at the outset that the sufficiency of the evidence to sustain the verdict has at no time been questioned by any specification of insufficiency. In other words, the legal sufficiency is questioned only on the grounds stated in the motion for a directed verdict. The appellant rests his case squarely upon the errors of law claimed to have been committed by the trial court. He contends that the court erred in overruling his objection to the introduction of any evidence and his motions for a directed verdict. He further contends that the court erred in its instructions to the jury.

It will be noted, that in the motion for a directed verdict it was asserted that the cause of action did not belong to the plaintiffs as a copartnership. It is true the evidence shows that some of the cattle belonged to the two plaintiffs individually although the greater portion of the cattle sold belonged to the plaintiffs jointly under a partnership arrangement. The evidence, however, clearly shows that the plaintiffs jointly sold all the stock, that is, that Jacobson and Dunn sold to the defendant the entire seventy-one head of stock and that they stood ready and willing to deliver them to the defendant in accordance with the original agreement; that the only reason the cattle were not so delivered was because the defendant refused to take them. In the circumstances we do not believe that the defendant is in a position to urge that the plaintiffs may not bring this action as they did. In any event, the point may well be deemed waived as it is not supported by any argument in the brief.

All the other contentions advanced by the appellant on this appeal are predicated upon certain provisions of the Uniform Sales Act (Laws 1917, chap. 202).

Appellant contends that the cause of action set forth in the complaint is one for the recovery of the balance due on the purchase price; and he asserts that under the provisions of § 60, chap. 202, Laws 1917, the seller in case a resale is made is not entitled to sue for the balance of the purchase price, but is entitled to recover only the loss occasioned by the breach of the contract of sale. He further contends that if the action be deemed one for damages for nonacceptance of the cattle it

must fail for the reason that the measure of damages set forth in the complaint is incorrect under § 64, chap. 202, Laws 1917, which provides that in such case:

"(2) The measure of damages is the estimated loss directly and naturally resulting in the ordinary course of events, from the buyer's breach of contract.

"(3) Where there is an available market for the goods in question, the measure of damages is, in the absence of special circumstances showing proximate damage of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted or, if no time was fixed for acceptance, then at the time of the refusal to accept."

In our opinion these contentions are not well founded. In this state all forms of actions and of pleadings have been abolished. Comp. Laws, 1913, §§ 7355, 7439. A plaintiff is only required to set forth in his complaint a plain and concise statement of the facts constituting his cause of action and a demand for the relief to which he supposes himself entitled, and, if the recovery demanded is money, to state the amount demanded. Comp. Laws, 1913, § 7440. The complaint under consideration here sets forth a contract for the sale of the cattle and a breach of the contract by the defendant. The complaint further sets forth what the plaintiffs did following the breach and the net loss resulting to them and demands judgment against the plaintiff for the amount of such loss. It is immaterial whether the plaintiffs' attorney, at the time he drew the complaint, had an erroneous theory as to the measure of damages. The question is whether the facts alleged show a cause of action and in our opinion that question must be answered in the affirmative; because, as already stated, the complaint does show a contract, a breach of the contract, and resulting damages to the plaintiffs. The failure to state the measure of damages did not render the complaint vulnerable to the objection made to the introduction of any evidence thereunder, Guild v. More, 32 N. D. 432, 451, 155 N. W. 44.

But it is contended that the court erred in its instructions to the jury upon the measure of damages. The instructions given on this question were as follows: "I charge you that in a breach of obligation arising from contract, the measure of damages is the amount which will compensate the party aggrieved for all the detriment approximately

caused thereby, or which in the ordinary course of things would be likely to result therefrom. Detriment is a loss or harm suffered in person or property. I charge you then that the measure of damages in this case, if you find from the evidence that the plaintiffs are entitled to any damages, would be the difference between the contract price of the cattle, namely, $9,000, and the market or current price of the cattle at the time and place when the cattle should have been accepted and shipped by J. A. Horner or his father A. Horner. *That if you believe from the evidence that the defendant did in fact buy the cattle through his duly authorized agent J. A. Horner on the 27th day of August, 1919, that he then refused to accept the cattle and so notified the plaintiffs, that the plaintiffs within a reasonable time thereafter and as soon as they could secure cars, shipped the cattle to the open market at Chicago, Illinois, and there sold them to the highest bidder, at public market, the measure of damages would be the difference between the contract price and the price which said cattle brought on the open market at the time of the sale, it having been shown here that there was no public market for the sale of said cattle at Fort Yates, North Dakota, or in the vicinity of the place where the plaintiffs lived.* But in no event can you allow the plaintiffs here a greater sum in damages than that asked for in their complaint, namely, $2,000, but it is for you, gentlemen of the jury, to determine from all the evidence in this case what damage, if any, the plaintiffs suffered by reason of the failure of the defendant, A. Horner, to accept the cattle, if you believe from the evidence that the defendant, A. Horner, actually bought the cattle through his agent J. H. Horner."

Appellant does not complain of the first part of the instruction just quoted, but asserts that the part which is printed in italics is erroneous. In our opinion the instruction complained of was not erroneous under the facts in this case. It will be noted that the instruction assailed is merely a part of the instructions relating to the measure of damages. Of course, the instructions must be considered as a whole, and viewed in the light of the facts of the case. The undisputed evidence here is to the effect that there was no market for live stock at Fort Yates and that it was essential to ship the cattle from that point to some available market. The evidence in this case does not disclose what place or places were available stock markets, or that there was any market for this stock

more readily accessible than the Chicago market. We have a situation where the current or market price at Fort Yates must necessarily be determined by the market price elsewhere less the necessary cost of transporting the cattle to the market. In considering the measure of damages prescribed by the Uniform Sales Act (Laws 1917, § 64, chap. 202) in an action for damages for nonacceptance of the goods, Williston (Williston, Sales, pp. 967, 968) says:

"The amount of the plaintiff's recovery in an acttion for breach of contract should be such a sum of money as will put him in as good a position as he would have been in had the defendant performed his legal obligation by carrying out the promise sued upon. The application of this rule to the law of sales is generally easy. If the buyer had accepted and paid for the goods as he was bound to do by his contract, the seller would have been obliged to incur all the expense of delivering the goods at the time and place agreed on, and he would on the other hand have received the price or become entitled to it. The buyer's wrong leaves him still in possession of the goods and frees him from any expense of delivering them, and on the other hand, deprives him of the price. His loss then is the difference between the value of the goods and the price which he was to receive for them. If he is saved any expense by not being obliged to put the goods in deliverable condition or to transport them to a particular place, this also must be taken into account. But the essential element of damage is conveniently expressed by the formula—the difference between the contract price, that is, the amount of the obligation which the buyer failed to fulfil, and the market price—that is the value of the goods which the seller has left upon his hands. As the market price varies, with time and place, it is essential to fix upon the market price at the time and place provided in the contract. The matter may, therefore, be summarized—that the measure of damage is the difference between the contract price and the market price of the goods at the time and the place when the contract should have been performed. If the market value for the goods equals or exceeds the contract price, though a legal wrong has been committed, the plaintiff has suffered no damage thereby, and, though entitled to judgment, can only get nominal damages. As the burden is upon the plaintiff to show what damage, if any, he has suffered, it is incumbent upon him, in damages to show that the market value of the goods is less

than the contract price. Though the market value at the time and place where delivery should have been accepted under the contract is the exact matter to be determined, that value sometimes cannot be determined directly. There may be no available market at that place. In such a case the value at the nearest available market will be accepted, taking the expense of transportation into account."

The same question was considered by the supreme court of Massachusetts in Barry v. Cavanagh, 127 Mass. 394. There the purchaser had failed to take paving stones when they were tendered him for acceptance at a designated place. In considering the amount of damages to which the seller would be entitled the court said:

"Now, if, when they were brought to Dover street bridge, where there was no market for them, it would cost all they would sell for at a market to carry them to the market, they were valueless there, and they would be entitled to recover the contract price in order to be made whole. If they (the stones) could be conveyed to a market for a part of what they would sell for, they were worth at the bridge the market price less the cost of getting them to the market, and the true rule would be the difference between what they were so worth and the contract price. Stated otherwise, if they were salable where they lay, to be delivered elsewhere at a price larger than the cost of delivery, the excess of such price above the cost of delivery was the market value, which should have been deducted from the contract price, in order to get at the damages."

See also Morrell v. Northern P. R. Co. 46 N. D. 535, 179 N. W. 922.

Under the evidence in this case it is not apparent that the plaintiff was prejudiced by the instruction of which he complains. The undisputed evidence is to the effect that there was no available market for the cattle at Fort Yates, and that this fact was known to the parties when the contract was made. At the time the contract was made, the plaintiffs had ordered cars in which to ship the cattle. When the defendant breached the contract he knew that by this act he left in the hands of the plaintiffs, and compelled them to keep stock for which there was no available local market. He also knew that some time would elapse before the necessary cars could be obtained for transporting the cattle. There is no evidence as to any available cattle market for the kind of cattle in controversy nearer than Chicago. Even if we

assume (as has been suggested we should) that there was an available market for the cattle at South St. Paul, there is nothing to indicate that that was a more favorable market than the Chicago market. In the circumstances it does not appear that the instruction was prejudicial. Morrell v. Northern P. R. Co. supra.

After the jury had retired they asked the court for further instruction upon the question whether the jury should fix the amount of damages in case they found in favor of the plaintiffs. The court, in response to such request, instructed the jury as follows: "Gentlemen of the jury, in case you find for the plaintiffs and against the defendant on all the issues under the evidence and the instructions heretofore given you by the court I will answer yes to your question as to whether the jury shall fix the amount of damages which you may deem the plaintiffs entitled to, qualified, however, to this extent, that the evidence as to what the plaintiffs received on the Chicago market for the seventy-one head of cattle it is undisputed that that amount was slightly under $7,000, and the contract price of the cattle being $9,000, then the plaintiffs, if you find them entitled to recover at all under the evidence, are entitled to recover at least $2,000, nor can they recover more than that amount. Does that answer your question?"

As already stated, the sufficiency of the evidence was not challenged in any manner in the trial court, except by the motion for a directed verdict. And an examination of the record shows that the trial court was correct in stating that there was no dispute in the evidence as to the amount which the cattle brought upon the Chicago market. It is also undisputed that the defendant refused to accept the stock; and that thereupon, the plaintiff shipped the cattle to the Chicago stock market and sold them at the earliest possible moment. And there is no contention but that the sale was fairly made in the open market and that the cattle were sold to the highest bidder, and brought all they were actually worth at the then prevailing prices. In the circumstances, the writer is of the opinion that the defendant was in no manner prejudiced by the instruction last quoted. A majority of the court, however, are of the belief that the court in giving that instruction, invaded the province of the jury. They are further of the opinion that, under the evidence as a whole, the jury was not required to return a verdict in the sum of $2,000, but might have returned a verdict in a lesser amount if

in their judgment the plaintiffs, in fact, sustained a lesser loss. Hence, the verdict must be set aside and a new trial had.

It is apparent, however, upon the record before us that the parties to this action received an eminently fair trial of all the questions in issue therein, excepting alone, the question as to the amount of damages plaintiffs are entitled to recover. This being so, we are all agreed that the new trial should be limited solely to the question of damages. See 4 C. J. 1194, 1195; Scandinavian American Bank v. Westby, 41 N. D. 276, 172 N. W. 665; and authorities cited.

The judgment and order appealed from are therefore reversed and the cause is remanded with directions to retry the issue of damages, and that issue alone. Appellant will recover the costs of this appeal.

BRONSON, Ch. J., and JOHNSON, BIRDZELL, and NUESSLE, JJ., concur.