WELCH MANUFACTURING COMPANY, a Corporation, Appellant, v. HERBST DEPARTMTNT STORE, a Corporation, Respondent.

(204 N. W. 849.)

**Appeal and error — after denial of motion for directed verdict and of motion for judgment notwithstanding verdict, and granting or denial of motion for new trial, moving party may appeal from order as whole and have ruling on motion for judgment notwithstanding verdict renewed.**

1. Construing chapter 335, Laws 1923, it is held that where a motion for a directed verdict has been denied and the moving party thereafter moves the court in the alternative that judgment be entered in his favor notwithstanding

---

Note.—(4) Recovery of expenditures as damages for breach of contract, see 8 R. C. L. 495; 4 R. C. L. Supp. 558.

  (5) Limitation of new trial to erroneous issue, see 20 R. C. L. 221; 3 R. C. L. Supp. 1046.

the verdict against him, or for a new trial, and the court denies the motion for judgment but grants (or denies) the motion for a new trial, the moving party may appeal from the order as a whole and have the ruling on the motion for judgment notwithstanding the verdict reviewed in the Supreme Court. Stratton v. Rosenquist, 37 N. D. 116, distinguished.

**Damages — party to contract, prevented from performing by other party, is entitled to compensation for detriment proximately caused by prevention of performance.**

2. A party to a contract who is willing and able to perform it and who, without fault on his part, is prevented from doing so by the other party, is entitled to be compensated for all the detriment proximately caused by such prevention of performance, or which in the ordinary course of things would be likely to result therefrom.

**Contracts — property owner held liable to damages to architect for arbitrarily and without cause preventing architect from completing agreement to furnish building plans.**

3. In the instant case it is *held* that where a contract for certain architectural service contains a proviso that the plans shall be submitted to the owner for inspection and criticism and if found necessary shall be changed until approved by the owner; and the architect prepares and submits plans which are received by the owner and in a general way declared satisfactory but not approved, and the architect later at the request of the owner furnishes further service in connection with the proposed improvement, the owner becomes liable in damages to the architect where he (the owner) arbitrarily and without any cause or reason prevents the architect from completing the agreement.

**Damages — if profits are too remote and speculative to be recovered, plaintiff may recover loss caused by outlay and expenditures.**

4. Where in an action for damages for the prevention of performance of a contract the profits are too remote and speculative to be capable of that clear proof required by law to permit a recovery therefor, the plaintiff may recover the loss occasioned by his outlay and expenditure toward performance.

**Appeal and error — if error at trial relates solely to questions separable from other issues determined by first verdict, new trial may be restricted solely to question affected by error.**

5. Where the error committed upon the trial of an action relates solely to a question which is separable from the other issues determined by the first verdict, a new trial may be restricted solely to the question affected by the error.

Opinion filed May 26, 1925. Rehearing denied August 3, 1925.

Appeal and Error, 4 C. J. § 2561 p. 669 n. 64 New; § 3234 p. 1194 n. 86. Archi-

tects, 5 C. J. § 12 p. 261 n. 61. Contracts, 13 C. J. § 769 p. 678 n. 41. Damages, 17 C. J. § 172 p. 855 n. 20, 21, 22, 23, 24; p. 856 n. 25, 26, 27, 28, 29, 30, 31.

Appeal from the District Court, of Cass County, *Englert, J.*

From an order denying defendant's motion for judgment notwithstanding the verdict, but granting a new trial, both parties appeal.

Affirmed.

*Divet, Holt, Frame & Thorp* and *D. R. Divet* and *Roger I. Wykes,* for appellant.

*Conmy, Young & Burnett,* for respondent.

CHRISTIANSON, Ch. J.: On November 10th, 1920, the plaintiff and defendant entered into the following written agreement:

Memorandum of Architects' Service Agreement.

"Whereas, the Welch Manufacturing Company, of Grand Rapids, Michigan, employs experienced, expert store architect designers, specializing in the preparing of floor plans, elevations and specifications for modern store equipment, tending to beautify the general appearance of a store, and adding to the efficiency of merchandising, and

Whereas, the Herbst Department Store, of Fargo, N. D., hereinafter called the Owner, are interested in improving merchandising facilities, through the possible installation of new or the rearrangement of present store equipment.

It is Mutually Agreed:

First, the Welch Manufacturing Company agrees to furnish for the owner, certain floor plans, elevations and specifications for store furniture needed for three (3) floors of the owner's store.

Second, the Welch Manufacturing Company agrees to furnish an expert store designer, who shall devote his skill, counsel, advice and experience in store planning and carry out the owner's wishes and trade requirements, so far as technically possible.

Third, the Welch Manufacturing Company agrees to co-operate with the owner and offer decorative suggestions, location of windows, position of elevator, stairways, radiation and lighting, and to consult with

the building architect; all with a view to solving the merchandising problems and to secure the best method of selling merchandise. The plans, when prepared, shall be submitted to the owner for inspection and criticism, and if found necessary, shall be changed, until approved by the owner.

Fourth, the owner, in consideration of the foregoing experts' service, agrees to co-operate in preparing the plans and to furnish suitable space for their actual preparation, at owner's store. And the owner also agrees to buy Ten Thousand Dollars ($10,000.00) worth of store fixtures (W. M. Lines) or to pay to the Welch Manufacturing Company the sum of five (5%) per cent upon Ten Thousand Dollars ($10,000.00) worth of the new fixture contracts.

Fifth, the Welch Manufacturing Company further agrees to furnish the owner with three sets of blueprints, and three sets of specifications of the new fixtures, permitting the owner to submit them to other manufacturers for estimates.

Sixth, the owner agrees to permit the Welch Manufacturing Company to bid on any and all other store fixtures that may be contracted for, as shown on the plans, elevations and specifications, and it is understood that there shall be no commission charged upon any portion of the store fixtures contracted for, which may be purchased elsewhere, except as provided above.

Seventh, the Welch Manufacturing Company agrees to commence the planning at once, or within a reasonable length of time thereafter.

Eighth, in consideration of the above, the Welch Manufacturing Company agrees to sell to the owner any revolving wardrobes, show cases, units or other articles manufactured in their line, at the lowest prices and best terms allowed."

In its complaint plaintiff alleges that it has been willing and ready at all times to perform all the duties imposed upon it by said contract and has offered the defendant to do so, but that the defendant has refused to permit the plaintiff to proceed with the execution of the contract. The plaintiff demanded damages in the sum of $500.00. The defendant in its answer admitted the corporate capacity of the plaintiff and of the defendant, and asserted that the instrument in suit was "null and void and of no effect by reason of being vague, indefinite and in-

complete" and containing "no promise mutually binding upon both parties." The answer further alleged that it was the intent of the parties, and so understood by the defendant, that the instrument in suit was for the sole purpose of granting the plaintiff permission to inspect the building, consult defendant's architect, and use space in defendant's store to prepare plans and specifications and to enable plaintiff to ascertain what fixtures the defendant would buy; that it was intended and so understood by this defendant and so represented by the plaintiff that said instrument did not obligate the defendant in any other manner or form unless the plans and specifications submitted were approved and accepted by this defendant; that defendant signed said instrument relying upon these representations and believing that such was the effect and meaning of said contract; that the defendant has fully performed all of the conditions of said instrument on its part, but the plaintiff has never submitted plans that could be satisfactorily approved or accepted by the defendant.

The undisputed evidence shows that the plaintiff, in good faith, entered upon the performance of the agreed work; that it submitted plans which were gone over by the defendant and plaintiff and pronounced satisfactory by the president of the defendant company, but with the reservation that he wanted more time to confer with the other departmental heads; that thereafter in January 1921, the defendant notified the plaintiff that it could not go on with the contract for a while because of certain difficulty about obtaining a lease. In June 1921, the defendant wired the plaintiff as follows: "Send us rush several preliminary sketches for store front eighty-six feet wide on arcade style inside block location. Not necessary to send representative yet." Plaintiff promptly complied with this request; and some time thereafter plaintiff's representative called at Fargo and discussed the matter with the president and the manager of the defendant and was informed that the defendant would soon be ready to go ahead with the plans and details. On July 27th, the defendant advised plaintiff by letter that the defendant had entered into a contract with an architect to start immediately on plans for the erection of two additional stories on the building which defendant was occupying, and after detailing the changes to be made in the building by reason of the proposed addi-

tion it said that the defendant is anxious to get plaintiff's "views and recommendations along those lines."

On July 28th, defendant informed plaintiff by letter that it would advise plaintiff the most opportune time to come. On August 17th, 1922, defendant wrote plaintiff: "We are all set and can do business with you next week some time if same is convenient." On receipt of this letter plaintiff ordered a designer sent to the defendant's store to work on the plans. Plaintiff's representative remained in Fargo and worked for about two weeks, consulting defendant's architects and submitting plans and finally left because he was unable to proceed further for the reason that defendant's local architects had not prepared their plans of the building. Plaintiff's representative came back to Fargo a few days later but was unable to proceed with the work because the plans for the building had not been completed. No further service was called for by defendant, and later its president called at plaintiff's place of business in Minneapolis and informed plaintiff that he had just signed a contract with the firm of Taussig & Flesch, whereby this firm was engaged to prepare plans covering the same work which the plans to be prepared by the plaintiff under their contract in suit were supposed to cover. Taussig & Flesch are interior architects, merely, and do not manufacture store fixtures and according to the undisputed evidence their plans invariably call for store fixtures of a type the plaintiff does not manufacture; and, hence, would be unable to supply. The president of the plaintiff testified in response to questions asked by his own counsel as to how he happened to employ Taussig & Flesch: "I was in the buying trip, and in the conversation with some other merchants Taussig & Flesch were very highly recommended to me, and they informed me of a job they had just completed at Davenport, Iowa, so, when I left New York, I went to Davenport and inspected the store that they had designed there, and was so much impressed with it that, upon my return to Chicago, I signed a contract with them."

The case was tried to a jury which returned a verdict in favor of the plaintiff for the sum demanded. Thereafter the defendant moved in the alternative for judgment notwithstanding the verdict or for a new trial. The trial court denied the motion for judgment notwithstanding the verdict, but granted a new trial. Both parties appeal from such order,—the plaintiff asserting that the trial court erred in grant-

ing a new trial and the defendant asserting that the trial court erred in refusing to order judgment notwithstanding the verdict.

At the threshold of the case we are met by an objection on the part of the plaintiff to a consideration of defendant's appeal. It is contended that, under the rule announced in Stratton v. Rosenquist, 37 N. D. 116, 163 N. W. 723, the order is nonappealable so far as the defendant is concerned. We are entirely satisfied with the rule announced in that decision; but since that case was decided the legislature has amended the statute in such manner as to change the rule there announced. The statute construed in Stratton v. Rosenquist, read as follows:

"In all cases where, at the close of the testimony in the case tried, a motion is made by either party to the suit requesting the trial court to direct a verdict in favor of the party making such motion, which motion was denied, the trial court on motion made that judgment be entered notwithstanding the verdict, or on motion for a new trial, shall order judgment to be entered in favor of the party who was entitled to have such verdict directed in his or its favor; and the supreme court of the state on appeal from an order granting or denying a motion for a new trial in the action in which such motion was made, or upon a review of such order or on appeal from the judgment, may order and direct judgment to be entered in favor of the party who was entitled to have such verdict directed in his or its favor, whenever it shall appear from the testimony that the party was entitled to have such motion granted." Comp. Laws 1913, § 7623.

In 1923 the legislative assembly amended the law to read thus:

". . . An order for judgment notwithstanding the verdict may also be made on a motion in the alternative form asking therefor, or if the same be denied, for a new trial. The ruling on the motion for a directed verdict may be reviewed by the Supreme Court without a motion for judgment notwithstanding the verdict or a motion in the alternative for such judgment or for a new trial having been first made in the trial court. If the motion for judgment notwithstanding the verdict be denied, the supreme court, on appeal from the judgment, may order judgment to be entered when it appears from the testimony that a verdict should have been so directed; and it may also so order on appeal from the whole order denying such motion when made in

the alternative form whether a new trial was granted or denied by such order." Sess. Laws, 1923, chap. 335, § 7643.

The amendment is identical with the Minnesota statute on the same subject; and prior to its adoption in this state it had been construed by the Supreme Court of Minnesota as permitting the defendant to appeal from the whole order in a case like the one at bar. Westacott v. Handley, 109 Minn. 452, 124 N. W. 226. We must presume that the legislature enacted the law in light of the construction given it by the Supreme Court of Minnesota (25 R. C. L. pp. 1069–1072), and give effect to the legislative intent as expressed in the law.

Defendant contends that under the agreement in suit there was, and is, no obligation on its part to compensate plaintiff unless and until plans have been approved by the defendant. In other words, it is contended that the test, and the sole test, of performance is defendant's express approval of the plans. Assuming, without deciding, that this is correct, and that defendant is the sole judge whether the plans are or are not satisfactory, and that there can be no performance, and no right to compensation, on the part of the plaintiff until plans have been approved by the defendant, it does not follow that the defendant may, with immunity, permit, and even request, plaintiff to enter upon the work to be performed under the agreement and incur the expense incident thereto, and then later arbitrarily change its purpose, and in effect terminate the agreement and prevent plaintiff from performing the agreement.

" 'Where a party stipulates that another shall do a certain thing, he thereby impliedly promises that he will do nothing which will hinder or obstruct that other in doing that thing; ' and indeed if the situation is such that the co-operation of one party is an essential prerequisite to performance by the other, there is not only a condition implied in fact, qualifying the promise of the latter, but also an implied promise by the former to give the necessary co-operation." 2 Williston, Contr. p. 1308.

The fact that the defendant was to approve the plans, and that plaintiff would not become entitled to compensation for performance thereof, unless and until plans were approved by the defendant did not render the agreement void. 1 Williston, Contr. p. 74. Neither did this provision authorize the defendant, arbitrarily, to

53 N. Dak.—4.

refuse to permit plaintiff to perform, or prevent it from performing, the work it in good faith had entered upon pursuant to the agreement. Rosseau v. Cohn, 20 Cal. App. 469, 129 Pac. 618. The agreement in suit is something more than a mere license to the plaintiff to make inspection of defendant's premises to enable it to prepare and submit plans as a basis for further negotiations between them with respect to the purchase of fixtures. At the time the agreement was signed, the defendant was contemplating the erection of a building. It was, or expected to be, in need of architectural service of the kind provided for in the agreement. Its contemplated plans materialized to such extent that it not only permitted plaintiff to enter upon the work contracted for, but requested it to do so. And apparently defendant's need for such service continued, as it later engaged other architects to prepare plans covering the same project that is covered by the contract in suit. By the terms of the agreement the plaintiff undertook to perform a definite service, for the performance of which it was to be compensated in one of two ways:—One way being certain; the other uncertain. The one which was certain to become operative in event the contingency on which the one which was uncertain did not happen. The agreement contains mutual promises. The service to be performed by the plaintiff is set out in detail. It is not only to prepare plans for the interior of a certain building, but "to furnish an expert store designer, who shall devote his skill, counsel, advice and experience in store planning and carry out the owner's wishes and trade requirements, so far as technically possible." And "(defendant) owner, in consideration of the foregoing expert's service agrees to co-operate in preparing the plans and to furnish suitable space for their actual preparation, at owner's store. And the owner also agrees to buy ten thousand dollars ($10,000.00) worth of store fixtures (W. M. Lines) or to pay to the Welch Manufacturing Company the sum of five (5%) per cent upon ten thousand dollars ($10,000.00) worth of new fixture contracts."

The plaintiff in good faith entered upon the performance of the contract and submitted specific plans which, in a general way, were declared satisfactory by the principal officer of the defendant. At least the plans were not disapproved; on the contrary after they had been submitted and considered the defendant both wrote and wired the

plaintiff to continue its work under the contract, and in accordance with such request the plaintiff, doubtless at considerable expense, sent its representatives to Fargo to carry on the work which it had agreed to perform under the contract. There is no evidence and no contention that the relations between the parties were terminated because plaintiff's work was not satisfactory, or because defendant had definitely disapproved of plans submitted by the plaintiff. On the contrary, one of the contentions advanced by the defendant on this appeal is that the suit is premature for the reason that the defendant has not, as yet, purchased fixtures and that, hence, it is not known "that no fixtures will be purchased from the plaintiff" and "as there has been no showing of a refusal to buy $10,000.00 worth of fixtures from Welch Manufacturing Co., there cannot be any breach of contract." In our opinion this contention is not well taken. It, like the contention first noticed, ignores the proposition that this is not an action in which compensation is sought for performance of the contract; but is an action in which damages are sought because defendant has refused to permit, or has prevented, performance.

It is also contended that the employment by the defendant of the firm of Taussig & Flesch did not amount to a prevention of performance or operate as a termination, or breach, of the agreement in suit. In our opinion this contention is unsound. It is undisputed that the agreement in suit contemplated that the plans to be prepared by the plaintiff thereunder should be such as to permit the use of fixtures manufactured by the plaintiff. After the plaintiff had entered upon the performance of the contract, and incurred the expense incident thereto, the officers of the defendant company changed their mind and decided to have plans prepared which would call for fixtures of a kind not manufactured by the plaintiff company, and they engaged a firm of architects to prepare plans of the latter kind, i. e., plans which, according to the evidence, would completely eliminate the plaintiff as a probable seller of fixtures. The testimony of the principal officer of the defendant company clearly indicates his strong preference for plans of the latter kind—a preference so strong that without prior notice to the plaintiff he (on behalf of defendant) deliberately entered into a written contract with another firm of architects to prepare plans which would call for fixtures of a kind different from those manu-

factured by the plaintiff. The defendant did not see fit to offer this latter contract in evidence. But there is no contention that it was not a binding contract for the performance of architectural service covering the precise project which the contract in suit covers. We think, reasonable men might well conclude that when defendant's president notified the plaintiff company that the defendant had employed the firm of Taussig & Flesch to perform the service which the plaintiff had undertaken to perform under the contract in suit, that this, in effect, amounted to a notification to the plaintiff that no further service would be required or expected from it under the contract. Bowell v. Draper, 149 Iowa, 725, 129 N. W. 56.

It follows from what has been said that the trial court was entirely correct in denying defendant's motion for judgment notwithstanding the verdict.

The next question to be considered is whether the trial court erred in granting a new trial. In our opinion this question must be answered in the negative. The case was submitted to the jury on the theory that the plaintiff, if entitled to recover at all, was entitled to recover the full amount stipulated in the agreement to be paid plaintiff as compensation upon performance, namely, $500.00. And on this appeal it is argued by the plaintiff that under the terms of the contract the provisions for a payment of $500.00 is one for liquidated damages. We do not believe that the contract is susceptible of this construction. Neither do we believe that the sum stipulated constituted the measure of plaintiff's damages in this case. Plaintiff did not perform its contract. The defendant prevented plaintiff from completing, or refused to permit plaintiff to complete, the contract. It is for the detriment proximately caused by this breach on the part of the defendant of its obligation to the defendant, that plaintiff is entitled to be compensated. Comp. Laws, 1913, § 7146. "Where, without fault on his part, one party to a contract who is willing to perform it is, by the other party, prevented from doing so, the primary measure of damages is the amount of his loss, or, as it has been otherwise expressed, the value of his contract which may consist of two distinct items, the one being the party's reasonable outlay or expenditure toward performance, and the other the anticipated profits which would have been derived from performance. Plaintiff is entitled to recover the amount which he has

upon the faith of the contract fairly and in good faith laid out and expended, and the loss upon material on hand at the time defendant refused to permit him to perform his agreement, together with a fair allowance for his own time and services.  Profits may be too remote and speculative to be capable of the clear and direct proof required by law, and in such a case plaintiff is confined to his loss of actual outlay and expense.  Failure to prove profits, however, will not prevent a recovery for outlay and expense." 17 C. J. pp. 855–857.

In our opinion the anticipated profits in this case are not capable of that clear proof required by law; and, hence, plaintiff's recovery must be restricted to the loss sustained by its actual outlay and expense toward performance, not exceeding in all the sum of Five Hundred Dollars.

It follows, therefore, that the trial court was correct in denying defendant's motion for judgment notwithstanding the verdict, and was, also, correct in ordering a new trial on the ground that an erroneous measure of damages was adopted upon the trial.  The latter, we think, was the only error prejudicial to the defendant which occurred upon the trial.  This being so, we are all agreed, that the new trial should be limited solely to the question of damages.  Jacobson v. Horner, 49 N. D. 741, 193 N. W. 327; Weigel v. Powers Elevator Co. 49 N. D. 867, 194 N. W. 113.

The order appealed from is therefore modified so as to grant a new trial on the question of the amount of plaintiff's damages, and on that issue alone, and as so modified the order is affirmed.

BIRDZELL, NUESSLE, BURKE, and JOHNSON, JJ., concur.