[File No. 7335]

ERNEST KINNISCHTZKE, Respondent, v. CITY OF GLEN ULLIN, a municipal corporation, Appellant.

(57 NW2d 588)

496

Opinion filed Jan. 8, 1953.   On Rehearing Mar. 25, 1953

*T. J. Boutrous* and *Higgins & Donahue,* for appellant.

*J. K. Murray* and *W. J. Austin,* for respondent.

Morris, Ch. J. This is an action for damages against the City of Glen Ullin based upon negligent injury to plaintiff's property.

The complaint alleges that the plaintiff owns 640 acres of land approximately one-half mile from the City of Glen Ullin and maintains thereon his home and residence for his family. It is then alleged that the defendant carelessly and negligently operates its sewer system and cesspool and by reason of such negligence causes the city sewage and offal to be discharged into a creek which flows through and adjacent to the plaintiff's premises and that the sewage has polluted the water in the creek and has piled up on the banks thereof adjacent to plaintiff's premises and home, causing a nauseating stench that has greatly damaged the plaintiff personally, and injured the value of the premises; that plaintiff's livestock drink the water from said creek and that as a result of the pollution the plaintiff's cattle have become greatly emaciated and reduced in value.

The defendant answered with a general denial and further answering the complaint admitted that it maintains and operates a sewage system for the treatment of sewage and waste which flows into a creek running across plaintiff's farm. It states that in so doing it acts entirely in a governmental capacity and in the performance of a governmental function; that it acts pursuant to the laws of the State of North Dakota and

in accordance with approved engineering standards and in accordance with the plans and specifications approved by the state board of health; that the sewage passes through an Imhoff septic tank where it is properly treated before being discharged; and that the defendant operates the sewage system in a prudent and lawful manner. The defendant also alleges that the plaintiff purchased his land with actual knowledge of the sewage system of the City of Glen Ullin and its manner of discharge and that the farm and lands have not decreased in value since his purchase thereof and that by virtue of his purchase of the farm with such knowledge he is now estopped from alleging or claiming damages due to the proper operation of the defendant's sewage system.

The case was tried to a jury and a verdict returned in favor of the plaintiff, upon which judgment was rendered December 7, 1951. On December 11, 1951, the defendant moved for a judgment notwithstanding the verdict. This motion was denied by the trial court in an order dated January 15, 1952. On June 7, 1952, the defendant caused to be served on the plaintiff's attorney and filed with the clerk of the district court a notice of appeal from the judgment entered on December 7, 1951. No appeal was taken from the trial court's order denying defendant's motion for judgment notwithstanding the verdict.

The record in this case involves an important question of practice which affects the scope of our review. The plaintiff and respondent herein contends that the order denying the defendant's motion for judgment notwithstanding the verdict is an appealable order and that, no appeal having been taken therefrom and the order being now final, the sufficiency of the evidence which was challenged by the motion cannot now be considered by this court on appeal from the judgment.

A motion for a judgment notwithstanding the verdict can only be entertained when at the trial the moving party asked the trial court for a directed verdict and was denied. A motion for judgment notwithstanding the verdict, in effect, reviews the court's ruling in denying a previous motion for a directed verdict and thus brings before the trial court for the second time the question of the sufficiency of the evidence to sustain a verdict

adverse to the moving party. Bormann v. Beckman, 73 ND 720, 19 NW2d 455; Ennis v. Retail Merchants Association Mutual Fire Ins. Co., 33 ND 20, 156 NW 234; Olson v. Ottertail Power Co., 65 ND 46, 256 NW 246, 95 ALR 418; Weber v. United Hardware & Implement Mutuals Co., 75 ND 581, 31 NW2d 456.

In a number of cases prior to 1934 this court held that an order denying a motion for judgment notwithstanding the verdict is not an appealable order. Turner v. Crumpton, 25 ND 134, 141 NW 209; Houston v. Minneapolis, St. Paul & Sault Ste. Marie Ry. Co., 25 ND 469, 141 NW 994, 46 LRA NS 589, Ann Cas 1915C 529; Starke v. Wannemacher, 32 ND 617, 156 NW 494, 4 ALR 167; Welch Manufacturing Co. v. Herbst Department Store, 53 ND 42, 204 NW 849; Stratton v. Rosenquist, 37 ND 116, 163 NW 723; Gray v. Elder, 61 ND 672, 240 NW 477. In Welch Manufacturing Co. v. Herbst Department Store, supra, it was held that under the provisions of Chapter 335 SLND 1923, where a motion for a directed verdict has been denied and the moving party thereafter moves in the alternative for a judgment notwithstanding the verdict or for a new trial and the court denies the motion for judgment but grants or denies the motion for new trial, the moving party may appeal from the whole order and have the ruling on the motion for judgment notwithstanding the verdict reviewed in the supreme court.

In 1934 this court decided:

"A motion for a judgment notwithstanding the verdict, which is not coupled with an alternative motion for a new trial, cannot be made after the judgment is entered." Olson v. Ottertail Power Co., 65 ND 46, 256 NW 246, 95 ALR 418.

Following this decision, the legislature, by the enactment of Chapter 245 SLND 1935, provided that:

"An order for judgment notwithstanding the verdict may also be made on a motion in the alternative form asking therefor, or if the same be denied, for a new trial. Such motion, singly or in the alternative, may be made either before or after entry of judgment," thus establishing by statute that a motion for a judgment notwithstanding the verdict might be made either be-

fore or after the judgment was entered. This statute also provided that:

"If the motion for judgment notwithstanding the verdict be denied, the Supreme Court, on appeal from the judgment, may order judgment to be entered, when it appears from the testimony that a verdict should have been so directed; and it may also so order on appeal from the whole order denying such motion when made in the alternative form whether a new trial was granted or denied by such order."

This language also appears in Chapter 220 SLND 1945 (Section 28–1509 1949 Supp NDRC). After the enactment of this statute we continued to hold that an order denying a motion for a judgment notwithstanding a verdict is not an appealable order. Stormon v. District Court, 76 ND 713, 38 NW(2d) 785.

It is of more than passing interest to note that in Kinney v. Brotherhood of American Yeomen, 15 ND 21, 106 NW 44, this court held that it is a proper and commendable practice to include in a single notice of appeal an appeal from a judgment and an appeal from an order made after judgment denying· a motion for judgment notwithstanding the verdict or for a new trial.

The practice question with which we are now concerned arises under Chapter 204 SLND 1951, purporting to amend and re-enact Section 28–1510 NDRC 1943, as .amended by Chapter 220 SLND 1945, and Section 28–1511 NDRC 1943, so that these sections now read as follows:

"28–1510. MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR FOR JUDGMENT IN ACCORDANCE WITH MOTION FOR DIRECTED VERDICT. In denying a motion for a directed verdict the court shall be deemed to have submitted the action to the jury subject to a later determination of the questions of law raised by the motion. Within ten days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment notwithstanding the verdict entered in accordance with his motion for a directed verdict, or if a verdict was not returned such party, within ten days after the jury has been discharged, may

move for judgment in accordance with his motion for a directed verdict. The motion for judgment notwithstanding the verdict may be joined with an alternative motion for a new trial. If a verdict was returned, the court may allow the judgment to stand or may reopen the judgment as if the requested verdict had been directed. If no verdict was returned, the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial."

·"28–1511. ORDERS SEPARATELY REVIEWABLE ON APPEAL. *The supreme court,* without a motion for judgment notwithstanding the verdict, or a motion in the alternative for such judgment or for a new trial, first made in the trial court, *may review the ruling on the motion for a directed verdict* on appeal from the judgment, *and may order judgment to be entered when it appears from the testimony that a verdict should have been so directed.* It also may so order *on appeal from an order denying a motion for judgment notwithstanding the verdict,* or on appeal from an order denying a motion for judgment in accordance with the motion for a directed verdict if no verdict was returned. On appeal from an order made upon a motion in the alternative for judgment notwithstanding the verdict or for a new trial the court shall review the whole order and may reverse, affirm, or modify the order as to any and all parties." (Italics supplied.)

The meaning of the italicized language of the last section above quoted becomes plain when we transpose the phrases so as to read: "The supreme court on appeal from an order denying a motion for judgment notwithstanding the verdict may review the ruling on the motion for directed verdict and may order judgment to be entered when it appears from the testimony that a verdict should have been so directed."

Where a motion for a directed verdict has first been made, the supreme court on an appeal from the judgment may review the evidence, and when it appears therefrom that a verdict should have been directed by the trial court, the supreme court may order the entry of such a judgment as would have resulted had the jury been properly directed. This was the law under Chapter 220 SLND 1945. The new statute made no change in

this respect. The change comes in the provision that the supreme court "also may so order on appeal from an order denying a motion for judgment notwithstanding the verdict, or on appeal from an order denying a motion for judgment in accordance with the motion for a directed verdict if no verdict was returned." This language clearly vests in the supreme court on an appeal from an order denying a motion for judgment notwithstanding the verdict the same power to review the evidence and order judgment as it has on an appeal from the judgment, provided a motion for a directed verdict has been properly made. The motion for judgment notwithstanding the verdict may be made pursuant to the provisions of the preceding section (28–1510, as set forth in Chapter 204 SLND 1951) which now provides:

"Within ten days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment notwithstanding the verdict entered in accordance with his motion for a directed verdict, or if a verdict was not returned such party, within ten days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict."

The motion made by the defendant did not comply with the statute. It did not challenge the sufficiency of the evidence by proper specifications thereof and made no reference to the motion for a directed verdict. "A motion for judgment notwithstanding the verdict reviews only the court's ruling in denying a motion for a directed verdict, . . . ." Westerso v. City of Williston, 77 ND 251, 42 NW2d 429. See also Weber v. United Hardware and Implement Mutuals Co., 75 ND 581, 31 NW2d 456; Bormann v. Beckman, 73 ND 720, 19 NW2d 455; Ennis v. Retail Merchants Association Mutual Fire Ins. Co., 33 ND 20, 156 NW 234. The defendant's motion was a motion for judgment notwithstanding the verdict in name only. It did not challenge the sufficiency of the evidence or seek a review of the trial court's action in denying defendant's motion for a directed verdict. This is the view taken by the trial court, who stated in his order denying the motion for judgment notwithstanding the verdict: "that no challenge was made to the sufficiency of the evidence; that said

motion embraced only errors committed at the trial and the refusal of the Court to grant defendant's motion for dismissal and that no specifications of error were embraced in the motion showing that the verdict was contrary to law, . . . ."

The only function of a motion for judgment notwithstanding the verdict is to review the ruling on the motion for directed verdict. The defendant's motion sought no such review and was a nullity. Its denial did not render the question of the sufficiency of the evidence res adjudicata, as the respondent contends. The failure of the defendant to appeal from the order denying its motion does not preclude a review on this appeal of the sufficiency of the evidence as challenged by the motion for a directed verdict or limit in any way the scope of this review.

At the close of the testimony and after both sides had rested the defendant moved for a directed verdict on two grounds— first, that the plaintiff could not recover against the city for the negligent operation of its sewage plant, since in operating the plant the city was engaged in a governmental function; and, second, that there was no competent evidence of damage or detriment to plaintiff's farm in that the evidence failed to show the fair and reasonable market value of the farm at the time it was acquired by the plaintiff and no evidence showing loss in value or detriment during the period it was owned by the plaintiff and up to the time of the commencement of the action. The defendant predicates error on the denial of its motion for a directed verdict.

In support of its contention that the plaintiff cannot maintain an action based entirely upon negligence in the maintenance and operation of the sewer system, defendant cites Mayer v. Studer & Manion Co., 66 ND 190, 262 NW 925; and Hamilton v. City of Bismarck, 71 ND 321, 300 NW 631. The former case involved an appeal from an order overruling a demurrer to the plaintiff's complaint which alleged that the county and the state highway commission negligently directed, consented to, and permitted the construction of a highway grade and culvert that was so defective that it stopped the natural flow of flood waters and caused them to back up and spread on the plaintiff's land. In

the opinion we pointed out that Section 14 of the state constitution provides that:

"Private property shall not be taken or damaged for public use without just compensation having been first made to, or paid into court for the owner, . . . ."

Then we said:

"Where the State or an agency thereof acting in a sovereign capacity takes or damages private property for public use without legal exercise of the power of eminent domain, the aggrieved party may recover compensation for the property thus taken or compensation for the damage to his property thus inflicted."

But we also said:

"The appellant further contends that the county is not liable for negligence and that the complaint in this action is based upon negligence and not upon an obligation arising from the exercise by the county of its sovereign power to take or damage private property for public use. The respondent argues that the complaint is capable of being construed as asking for the recovery of compensation for property damaged by the county in its sovereign capacity and that if all allegations of negligence be disregarded the complaint still states a cause of action. We do not agree with the respondent. A careful reading of the complaint impels us to hold that the cause of action sought to be stated is based wholly upon the careless and negligent construction of the highway and culvert and not upon an obligation to compensate for private property taken or damaged for public use. The demurrer must be sustained."

The foregoing is in accord with the well established principle that the state may not be sued in its own courts without its consent. Dunham Lumber Co. v. Gresz, 70 ND 455, 295 NW 500; Wirtz v. Nestos, 51 ND 603, 200 NW 524; State ex rel. Shafer v. Lowe, 54 ND 637, 210 NW 501; Watland v. North Dakota Workmen's Compensation Bureau, 58 ND 303, 225 NW 812.

In Hamilton v. City of Bismarck, supra, after quoting from Mayor v. Studer & Manion Co., we said:

"Thus, we distinguish between an action for damages based upon negligence and an action based upon damage to private property for public use within the purview of Section 14 of the

Constitution. That section of the Constitution does not bear upon damages resulting from negligence of public corporations or their agents; it deals with those damages that would normally flow from the exercise of the power of eminent domain."

This court has taken a liberal view of the right of recovery by one whose property has been damaged by the deliberate and purposeful action of a municipality while engaged in a governmental function. See Messer v. City of Dickinson, 71 ND 568, 3 NW2d 241; Donaldson v. City of Bismarck, 71 ND 592, 3 NW 2d 808; Conlon v. City of Dickinson, 72 ND 190, 5 NW2d 411, 142 ALR 525.

In Donaldson v. City of Bismarck, supra, we said:

"The provisions of section 14 of the Constitution are not restricted to eminent domain proceedings. They are applicable as well where private property has been taken or damaged without the consent of the owner, and where no condemnation proceeding has been brought. It is well settled that in such case the constitutional guaranty may be invoked, and the owner may maintain an action to recover just compensation for the property taken or the damage inflicted."

The plaintiff relies upon our decision in Messer v. City of Dickinson, supra, and quotes copiously from our opinion. The majority of this court therein said:

"In this case, the city had legislative authority to empty its sewage into the river but that authority was limited by the duty resting upon the city to exercise its authority in a reasonable manner and to take all reasonable precautions against damaging private property. By casting its sewage into the river with improper and insufficient treatment for a long period of time, the city was remiss in its duty and it may not now rely upon its legislative immunity to protect it from responding in damages."

Furthermore, in paragraph 5 of the syllabus, it is said:

"A legislative grant of power to a municipality to do acts which may result in injury if improperly or negligently performed does not immunize the municipality against responding in damages for acts performed negligently or in an unreasonable manner."

The action in Messer v. City of Dickinson was one for damages

for maintaining a nuisance. Recovery was sought under the law of nuisances and not that of general negligence or general liability of the municipality for the commission of a tort. In addition to the cases cited in Messer v. City of Dickinson we find similar authority in City of Temple v. Mitchell (Tex Civ App) 180 SW2d 959; Gray v. City of High Point, 203 NC 756, 166 SE 911.

Jeakins v. City of El Dorado, 143 Kan 206, 53 P2d 798, involved the sufficiency of a petition alleging that the city constructed a sewer system emptying into a stream and then so negligently operated it as to damage the plaintiffs. The court says:

"Assuming those facts to be proved, it would be no defense to the city that the construction and maintenance of a sewer is a governmental function.

"Appellant insists there is no allegation of nuisance in the petition. The word 'nuisance' has been said to be incapable of precise definition. Literally nuisance means annoyance, and any use of property which endangers life or health, gives offense to the senses, violates the laws of decency or obstructs reasonable and comfortable use of property may be said to be a nuisance. . . . While the plaintiffs did not plead a conclusion and state that the facts alleged constituted a nuisance, they did allege the city had so operated the sewers, sewage-disposal plant and the waste therefrom that the waters in the stream bordering their property were polluted, and an obnoxious and nauseating stench arose therefrom, etc. We think the allegations of the petition were sufficient to state a nuisance existed."

In this case the complaint alleges:

"That the plaintiff owns and operates said farm and maintains livestock thereon, including cattle, and maintains his home and residence thereof where he and his family reside; that the defendant carelessly and negligently operates and maintains its said sewage system and its said cesspool and by reason of such negligence causes the city sewage and offal to flow into said flowing creek; that said sewage and offal from said city has polluted said flowing water in said creek which flows through and adjacent to said premises of the plaintiff, and has caused

sewage to pile up on the banks of said creek adjacent to the plaintiff's said premises and his said home; that said sewage causes a nauseating stench which has greatly damaged the plaintiff personally and greatly injured the value of his said premises; that plaintiff's livestock drink water from said creek and as a result the said sewage as aforesaid has caused the plaintiff's said cattle to be greatly emaciated and reduced in value; that by reason of such nauseating stench and odor from such sewage life on the plaintiff's said farm is unbearable; that by reason of the aforesaid facts plaintiff has been damaged in the sum of $10,-000.00."

A municipality differs somewhat in the nature of its creation and operation from the state and its political subdivisions, such as counties. Article X of the North Dakota Constitution provides for county organization which is set forth therein in considerable detail, including provisions for the election of certain county officials. Duties and limitations of the legislative assembly with respect to counties are also prescribed. Much greater authority with respect to municipal corporations is vested in the legislative assembly by Article VI, which provides:

"The legislative assembly shall provide by general law for the organization of municipal corporations restricting their powers to levying taxes and assessments, borrowing money and contracting debts, and money raised by taxation, loan or assessment for any purpose shall not be diverted to any other purpose except by authority of law."

The legislature has given to municipalities the authority to establish and maintain sewer systems. Section 40–2202 NDRC 1943. When necessary a municipality may conduct its sewage beyond the municipal limits and may, by purchase or condemnation proceedings, acquire private property over which to construct the sewer. Section 40–2203 NDRC 1943. As we held in Messer v. City of Dickinson, supra, the legislature, by these provisions, did not sanction acts of a municipality resulting in private damage where that damage was not the inherent result of the exercise of statutory authority, but resulted from the manner in which that authority was exercised. This is in ac-

cordance with the general rule which is thus stated in McQuillin, Municipal Corporations, 3rd Ed Section 53.49:

"A municipality may not itself create and maintain a nuisance which results in injury to person, or inflicts or involves damage to private property, without subjecting itself to civil liability for its wrongful and unlawful act. This is true, as a general rule, regardless of the fact whether or not the thing done or omitted resulting in the nuisance constituted negligence; and moreover the municipality cannot escape liability on the ground that the construction was authorized by statute, or that improvement plans were adopted by the city engineer, or that in performing the work the municipality was exercising a governmental function."

Negligence may or may not result in the creation of a nuisance, and, on the other hand, a nuisance may be created wholly without negligence. The distinction is set out in 39 Am Jur Nuisances, Section 4, thus: "liability for negligence is based on a want of proper care, while, ordinarily, a person who creates or maintains a nuisance is liable for the resulting injury to others regardless of the degree of care or skill exercised to avoid such injury."

In Bates v. City of Houston (Tex Civ App) 189 SW2d 17, it is said:

"Where negligence reaches the level that it becomes the maintenance of a nuisance it becomes a tort different in character from mere negligence."

Negligent operation of a septic tank may result in a nuisance which renders the municipality liable. Newton v. City of Roundup, 60 Mont 24, 198 P 441, 20 NCCA 885; City of Tecumseh v. Deister, 112 Okla 3, 239 P 582.

McQuillin, Municipal Corporations, 3rd Ed Section 53.131, has this to say:

"Although the authorities are in conflict upon the question as to whether the operation of a sewage disposal plant is a governmental or a proprietary function, the prevailing view seems to be that a municipality may be held liable for death or injury resulting from negligent or other tort in the operation of such a plant. Likewise, irrespective of negligence, and even

though it is constructed and maintained under statutory authority or in the performance of a governmental function, a municipal corporation may be held liable if a nuisance results from operation and maintenance of a septic tank, or other sewage disposal system."

We reach the conclusion that where a municipality purposely or negligently so operates a sewage disposal plant that it becomes a nuisance which results in injury to property, the municipality is liable for damages in an amount sufficient to compensate for the injury.

Defendant's second ground of attack upon the verdict and judgment is based upon the contention that the plaintiff failed to prove damages. It is claimed that there is no showing of the fair market value of the farm at the time of its purchase by the plaintiff and no competent evidence showing loss of value.

Plaintiff and other witnesses testified that the defendant's sewage disposal plant which consisted of an Imhoff tank was located about one-half mile west of plaintiff's land and that the tank discharged into a creek that ran across plaintiff's farm. The plaintiff bought the land November 1, 1950, and did not notice any sewage pollution at that time. The stream runs through plaintiff's pasture in which, in the summer time, he keeps nineteen cows. Plaintiff described in some detail the pollution of the creek as the result of the discharge of sewage from the Imhoff tank. He testified that he paid $37.00 an acre for the farm, or about $22,000.00 in all. One of the defendant's witnesses testified that in October or November of 1950 the fair market value of the farm was $37.00 an acre, or what it sold for. The plaintiff further testified that as a result of the pollution the farm was actually worth about one-half of that amount. The evidence furnished the jury a measure for determining the dollar value of the detriment to the farm, which was the difference in value between the time of purchase and the time of trial. Neither the correctness nor the applicability of that measure has been questioned. The trial court did not err in refusing to direct a verdict. Moreover, the trial court in an unchallenged instruction with regard to the measure of damages applicable to the farm instructed the jury as follows:

"I charge you that the measure of damages which can be recovered by the plaintiff in this case cannot be greater than the loss in market value, if any, of the farm of the plaintiff, if caused by the operation of the sewage plant or Imhoff tank of the defendant between the time when the plaintiff purchased the said farm and the time of the commencement of this action considering the actual condition of the said farm and the manner in which it was affected, if any, by the discharge of the sewage effluent into the creek across the said land both at the time of its purchase by the plaintiff and the time of the commencement of this action and entirely without regard to whether the plaintiff did or did not know of the effect of the defendant's sewage effluent, if any, at the time he purchased the said farm."

Without expressing our approval of the measure of damages, we point out that it was submitted to the jury and acquiesced in by the defendant and became the law of the case. The evidence is sufficient to warrant the verdict of the jury under the measure of damages as submitted had the element of damages to the cattle been eliminated. This brings us to the final point in the case.

The defendant specifies as error the refusal of the trial court to give a requested instruction to the effect that the plaintiff failed to prove any amount of damage whatsoever to the livestock owned by him arising out of the operation of the city's sewage system or Imhoff tank and that the plaintiff was not entitled to any damages claimed to have been suffered for detriment to his cattle.

Paragraph 3 of the complaint, which we have quoted above, sets forth that the plaintiff's livestock drank water from the creek and that as a result of the sewage the cattle became greatly emaciated and reduced in value. This statement is in part the basis upon which the plaintiff seeks to recover damages. The evidence, however, shows no measurable damage to the cattle. The plaintiff did testify that at the time he placed his cattle in the pasture they were in better shape than when he took them out and that because of the water situation they wouldn't drink enough water. Four of the cattle were milk cows and when

asked about the effect of drinking water from the creek, the plaintiff stated:

"There was a drop but I couldn't tell just how much it was, didn't give the milk that they should have."

There is no evidence in the record upon which the jury could determine the amount of damage to the cattle, if any. The evidence, while indicating that a detriment may have been suffered, furnishes no measure of damages. As far as the record goes, the jury could only speculate. The defendant was therefore entitled to an instruction similar to the one requested eliminating the cattle as a basis for awarding damages. Instead of pointing out this lack of evidence to the jury, the trial court did the opposite, and instructed them as follows:

"You are further instructed that in case you find in favor of the plaintiff in this case and find from a fair preponderance of the evidence that there has been any depreciation in the reasonable market value of the plaintiff's cattle between the time in March, 1951 when he moved his cattle onto this said farm and October 2nd, 1951, the time of the commencement of this action, by reason of the careless and negligent operation and maintenance by the defendant of its sewage system and cesspool, and you find by a fair preponderance of the evidence that the sole and proximate cause of any depreciation in the reasonable market value of his said cattle is the careless and negligent maintenance and operation by the defendant of its sewage system and cesspool, then you will proceed to determine, from the evidence, if any, the amount of such depreciation, if any, and you may take that amount into consideration and include it in the amount of your verdict in this case, not exceeding $2,000.00."

Thus the court permitted the jury to find damages in favor of the plaintiff for an item upon which there was no proof as to the amount of damage suffered, if any. The jury brought in a verdict for $2,975.00, which, under the instructions, could, and presumably did, include damages for injury to the cattle which the jury could arrive at only by speculation. The pleadings, proof, and instructions are such that it is impossible to tell what, if any, amount was included in the verdict as damages for the

cattle. Such a verdict cannot stand. This situation leaves us no alternative but to direct that the judgment appealed from be reversed, and a new trial granted. Reitman v. Miller, 78 ND 1003, 54 NW2d 477.

It is so ordered.

GRIMSON, CHRISTIANSON, SATHRE and BURKE, JJ., concur.

MORRIS, Ch. J. On rehearing. We granted a rehearing at which the case was reargued in behalf of both parties as to all nonprocedural questions. The appellant challenges the correctness of our decision as a departure from the rule that in North Dakota municipalities are not liable for tort under these decisions: Vail v. Town of Amenia, 4 ND 239, 59 NW 1092; Montain v. City of Fargo, 38 ND 432, 166 NW 416, LRA1918C 600, Ann Cas 1918D 826; Moulton v. City of Fargo, 39 ND 502, 167 NW 717, LRA1918D 1108; Hadler v. North West Agricultural, Live Stock & Fair Ass'n, 61 ND 647, 239 NW 736; Holgerson v. City of Devils Lake, 63 ND 155, 246 NW 641, 34 NCCA 463. All of these cases involve the liability of political subdivisions of the state or municipalities for personal injuries or death. They are, of course, grounded on negligence. In none of them was recovery permitted. However, they do not establish a general and all inclusive rule that municipalities are not liable for tort.

Vail v. Town of Amenia, supra, involved damages for personal injuries which the plaintiff contended resulted from the failure on the part of the Township of Amenia to properly maintain a bridge in a safe condition. The court, after pointing out that the township was a political subdivision of the state, said:

"The care of highways and bridges devolves primarily upon the state. It is a governmental function, but for negligence in its performance the state is not liable, because the government is not liable to the individual *unless made so by statutory or constitutional enactment.*" (Italics supplied.)

In Hadler v. North West Agricultural, Live Stock & Fair Ass'n, supra, the plaintiff sought damages for personal injuries received while attending a fair. The court, after discussing the

organization of the fair association and the annual appropriation provided therefor by state statute, said:

"Ordinarily such agencies of the state are not responsible on account of the misfeasance or nonfeasance of officers through whom they must act. This is because they are performing governmental functions and the government is not liable to the individual *unless made so by statutory or constitutional enactment.*" (Italics supplied.)

In none of the cases cited above was there a statutory or constitutional provision requiring the municipality or subdivision to respond in damages for the injury inflicted. Section 14 of the North Dakota Constitution provides that:

"Private property shall not be taken or damaged for public use without just compensation having been first made to, or paid into court for the owner, . . . ."

Negligence constitutes no exception to this provision, nor is tort of any kind made an exception. If private property is taken or damaged for public use, compensation must be made in all cases, regardless of the means employed or the intent or the lack of intent on the part of public officials. There may be instances where private property is injured through the negligence of municipal officials acting in a governmental capacity which would not amount to damaging the property for public use within the meaning of Section 14 of our constitution. See Hamilton v. City of Bismarck, 71 ND 321, 300 NW 631. But that is not the case here. The facts set out in the complaint indicate that damage to property resulted from a governmental activity negligently conducted over a considerable period of time and in such a manner that it became a nuisance.

The appellant argues that damages cannot be recovered in an action in which the basis for recovery is primarily that of negligence for that would be permitting recovery for a tort and would be contrary to the holdings of this court in the cases above cited. In support of this contention appellant cites Mayor v. Studer & Manion Co., 66 ND 190, 262 NW 925, in which we held that a demurrer to a complaint based wholly upon the careless and negligent construction of a highway and culvert should be sustained. It should also be noted, however, we ordered that

the plaintiff be permitted to amend the complaint. In this case no attack was made upon the sufficiency of the complaint before trial. After the jury had been chosen and the first witness called, counsel for the appellant stated:

"At this time the defendant, City of Glen Ullin, objects to the introduction of any testimony whatsoever on behalf of the plaintiff in this case on the ground and for the reason that the complaint alleges negligence on the part of the city in connection with the operation of its septic tank and the disposal of the outflow therefrom and the manner in which the said septic tank and sewage system of the city of Glen Ullin has been managed during the time in question, for the reason that under the laws of this State the operation, construction, operation and maintenance of a sewage system, including a septic tank and of the disposal of the outflow from the said system and tank, is purely a governmental function and that under the constitution and statutes of this state the city is not liable for any damage resulting therefrom; particularly is the city not liable for any damage resulting or claiming to result from the negligent operation, construction or maintenance of a sewage disposal plant, sewage system, to personal property."

This objection was overruled. We think it was properly overruled. It does not directly attack the complaint as failing to state a cause of action, nor does it correctly state the law under our constitution and statutes with respect to the liability of a city for damage to property resulting from its performance of a governmental function. Such an objection, coming as it does at the beginning of the trial without warning to the court or opposing counsel, will be construed strictly against the maker and the pleading against which the attack is made will be most liberally construed.

In Cannon v. Miller, 22 Wash2d 227, 155 P2d 500, 157 ALR 530, it is said:

"While the overruling of a demurrer to a complaint or the failure to interpose a demurrer thereto does not preclude the adverse party, at the calling of the case for trial, from objecting to the introduction of any evidence on the ground that the complaint does not state facts sufficient to constitute a cause of ac-

tion, nevertheless, if the complaint be for the first time attacked in the last-mentioned manner, the pleading will be liberally construed and, in passing upon such objection, the court will bring to the support of the pleading every reasonable intendment and legitimate inference that may be drawn from its allegations and also from the evidence adduced to sustain the plaintiff's cause."

In Keller v. Gerber, 114 Utah 345, 199 P2d 562, the court stated:

"There is no doubt that in this jurisdiction, as in most of the code jurisdictions, defendant may, by objection to the receiving of evidence, raise the issue of the sufficiency of the plaintiff's complaint to state a cause of action. However, this is a procedure which is not looked upon with favor by the courts; it is merely tolerated. And it has been said that where such an objection is made, counsel has the duty of pointing out to the court wherein he considers the complaint defective." See also James River National Bank v. Purchase, 9 ND 280, 83 NW 7.

"It does not take much of a pleading to be good against an objection to the introduction of evidence." Estes v. Edgar Zinc Co., 97 Kan 774, 156 P 758, quoted in Wallis v. Carder, 11 Cal App2d 362, 53 P2d 787.

If we construe appellant's objection as a belated challenge to the sufficiency of the complaint, we must construe that complaint with liberality and, in so doing, we find that, while it pleads negligence, it does set forth certain acts of the city and alleges that those acts "greatly injured the value of his said premises." The appellant, having elected to defer its attack until the taking of testimony was reached, will not now be permitted to take advantage of a technical situation which might deprive the plaintiff of compensation contemplated by the constitution, and since a new trial must be granted for other reasons expressed in our opinion to which we adhere, we deem it in the interests of justice and orderly procedure, when the case is remanded to the district court, that both parties be permitted to amend their pleadings.

We adhere to our former decision.

GRIMSON, CHRISTIANSON, SATHRE and BURKE, JJ., concur.