**Robert LEINGANG, Plaintiff and Appellant,**

v.

**CITY OF MANDAN WEED BOARD, Defendant and Appellee.**

Civ. No. 900420.

Supreme Court of North Dakota.

April 18, 1991.

Kenneth S. Rau of Moench Law Firm, Bismarck, for plaintiff and appellant.

Sharon A. Gallagher, City Atty., Mandan, for defendant and appellee.

LEVINE, Justice.

Robert Leingang appeals from an award of damages for breach of contract. The issue is whether the trial court used the appropriate measure of damages. We hold it did not, and reverse and remand.

The City of Mandan Weed Board awarded Leingang a contract to cut weeds on lots with an area greater than 10,000 square feet.[1] Another contractor received the con-

1. Leingang has not provided a transcript of proceedings as required by Rule 10(b), North Dakota Rules of Appellate Procedure. Although the parties stipulated that a transcript was not need-

ed, they did not prepare a statement of the case using Rule 10(g), North Dakota Rules of Appellate Procedure or stipulate to any facts. We, therefore, base our recitation of facts upon un-

tract for smaller lots. During 1987, Leingang discovered that the Weed Board's agent was improperly assigning large lots to the small-lot contractor. Leingang complained and the weed board assigned some substitute lots to him.

Leingang brought a breach of contract action in small claims court and the City removed the action to county court. The City admitted that it had prevented Leingang's performance under the contract and that the contract price for the lost work was $1,933.78. A bench trial was held to assess the damages suffered by Leingang.

At trial, Leingang argued that the applicable measure of damages was the contract price less the costs of performance he avoided due to the breach. Leingang testified that the total gas, oil, repair and replacement blade expenses saved when he was prevented from cutting the erroneously assigned lots was $211.18.

The City argued that to identify Leingang's damages for net profits, some of Leingang's overhead expenses should be attributed to the weed cutting contract and deducted from the contract price. The City offered testimony about the profitability of businesses in Mandan and testimony from Leingang's competitor about the profitability of a weed cutting business in Mandan. The City also offered Leingang's 1986 and 1987 federal tax returns. Based on the Schedule C—"Profit or Loss From Business"—in those returns, the City argued that Leingang attributed considerably more expenses to the business of cutting weeds than he had testified he had avoided.

The trial court adopted what it called a "modified net profit" approach as the measure of damages. It derived a profit margin of 20% by subtracting four categories of expenses reported on Leingang's Schedule C, and attributed to the weed-cutting business, from the weed-cutting income reported to the IRS. The trial court selected insurance, repairs, supplies, and car and truck expenses as costs attributed to the weed-cutting business. Applying the profit margin of 20% to the contract price, the trial court deducted 80% from the contract price as expenses and awarded Leingang $368.59 plus interest. Leingang appeals.

Leingang contends that the method used by the trial court to derive net profits was improper because it did not restrict the expenses that are deductible from the contract price to those which would have been incurred but for the breach of the contract, *i.e.*, those expenses Leingang did not have to pay because the City kept him from doing the work. We agree.

■ For a breach of contract, the injured party is entitled to compensation for the loss suffered, but can recover no more than would have been gained by full performance. NDCC §§ 32–03–09, 32–03–36. Our law thus incorporates the notion that contract damages should give the non-breaching party the benefit of the bargain by awarding a sum of money that will put that person in as good a position as if the contract had been performed. *See generally* 22 Am.Jur.2d *Damages* § 45 (1988). Where the contract is for service and the breach prevents the performance of that service, the value of the contract consists of two items: (1) the party's reasonable expenditures toward performance, including costs paid, material wasted, and time and services spent on the contract, and (2) the anticipated profits. *Welch Mfg. Co. v. Herbst Dept. Store*, 53 N.D. 42, 204 N.W. 849, 854 (1925). Thus, a party is entitled to recover for the detriment caused by the defendant's breach, including lost profits if they are reasonable and not speculative. *Id. See* 25 C.J.S. *Damages* § 78 (1966).

■ Where a plaintiff offers evidence estimating anticipated profits with reasonable certainty, they may be awarded. *See King Features Synd. v. Courrier*, 241 Iowa 870, 43 N.W.2d 718 (1950). In *King Features*, the plaintiff proved the value of its anticipated profits by reducing the contract price by the amount it would have spent to perform. The court held that this proof was reasonably certain. In quantifying the costs of performance, the plaintiff did not deduct "overhead" expenses because the evidence established that those

disputed assertions made by the parties on appeal.

expenses were constant whether or not the contract was performed. 43 N.W.2d at 725–26.

The *King Features* approach fulfills the *Welch Mfg.* requirement that a plaintiff be compensated for all the detriment caused by the breach. Under *King Features*, constant overhead expenses are not deducted from the contract price because they are expenses the plaintiff had to pay whether or not the contract was breached. The *King Features* approach compensates plaintiff for constant overhead expenses by allowing an award of the contract price, reduced only by expenses actually saved because the contract did not have to be performed. The remaining contract proceeds are available to pay constant expenses. *See also Buono Sales, Inc. v. Chrysler Motors Corp.*, 449 F.2d 715, 720 (3d Cir.1971) [because fixed expenses must be paid from the sum remaining after costs of performance are deducted, further reducing contract price by fixed expenses would not fully, or fairly, compensate plaintiff].

▮ Neither side argues that lost profits are not calculable here. Instead, each urges a different method for computing lost profits. In measuring Leingang's anticipated profits, the trial court erroneously calculated a "net profit" margin by deducting general costs of doing business including insurance, repairs, supplies, and car and truck expenses, without determining whether these costs remained constant regardless of the City's breach and whether they were, therefore, not to be deducted from the contract price. *King Features*, 43 N.W.2d at 726. The reduction from the contract price of a portion of the "fixed," or constant expenses, effectively required Leingang to pay that portion twice. *See Buono Sales, Inc.*, 449 F.2d at 720.

We reverse the judgment and remand for a new trial on the issue of damages.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.