**HERMES v. MARKHAM et al.**

No. 7349.

Supreme Court of North Dakota.

Aug. 15, 1953.

Rehearing Denied Oct. 16, 1953.

See, also, N.D., 49 N.W.2d 238.

John A. Zuger, Bismarck, for plaintiff and respondent.

Murray & Murray, Bismarck, for defendants and appellants.

SATHRE, Judge.

This action arose out of a collision between an automobile driven by the plaintiff R. W. Hermes and a taxicab driven by one of the defendants Lloyd Markham an employee of the defendant, City Cab Company, on the 4th day of May 1950 on the highway known as the air port road a short distance southeast of the City of Bismarck. The plaintiff was driving south and the defendant Markham was driving north. The collision occurred at about 10 o'clock in the forenoon. The complaint alleges that the plaintiff was driving south on said highway in his own lane of traffic; that the defendant Lloyd Markham was then and there in charge of the automobile of the defendant City Cab Company; that he drove the same negligently, carelessly and in disregard of the safety of other persons and property rightfully upon the highway; that contrary to the motor vehicle rules of the road he operated said automobile on the wrong side of said public highway and by reason thereof said defendant ran into and collided with the automobile driven by the plaintiff causing damage to the plaintiff's automobile in the sum of $1,354; and further causing personal injury to the plaintiff in the amount of $1,000; that by reason of said injury the plaintiff was prevented from working for three days after said accident and lost his usual wages and earnings in the amount of $45; that by reason of said injuries plaintiff was compelled to and did secure medical services and obligated himself to pay doctor bills in the sum of $23. That by reason of the negligence of the defendants the plaintiff's automobile was so seriously damaged that the plaintiff lost the use of it from May 4 to June 15, 1950 while his automobile was being repaired, and during said period of time the plaintiff was compelled to rent an automobile to use at the rental of $6 per day to his damage in the sum of $258.

Plaintiff demands judgment in the sum of $2,680.

The defendants answered denying negligence on their part and alleging that the plaintiff was negligent and that his injuries, if any, and his damage to his automobile were caused by his own contributory negligence. As a further defense the defendants allege that the plaintiff carried damage in-

surance covering all loss to his automobile with the National Farmers Union Automobile and Casualty Company; and after the collision the said insurance company adjusted the damages of the plaintiff in the sum of $687.84 and paid the plaintiff for his damages the sum of $637.84; that the said insurance policy contained a subrogation clause providing among other things that upon payment of such damages the said insurance company would become subrogated to the plaintiff's claims for damages; that upon acceptance of payment of such damages, the plaintiff assigned, transferred and set over to the said insurance company all claims and causes of action of every kind and nature which the plaintiff had then, or thereafter had against the defendants; that by reason of said assignment and said subrogation the plaintiff was not the real party in interest and had no cause of action for damages against the defendants at the time he commenced said action; that the real party interested was the said insurance company; that the amount which said insurance company paid the plaintiff was his damages in full. The defendants then counterclaimed alleging that by reason of the negligence of the plaintiff, defendants' cab was damaged in the sum of $800. Defendants then demanded judgment that plaintiff take nothing and that they recover damages in the sum of $800. The case was tried at Bismarck, North Dakota, before the Hon. J. O. Wigen, one of the judges of the Sixth Judicial District, and a jury, June 4 and 5, 1952.

The plaintiff testified in substance as follows:

The collision took place on the air port road on the 4th day of May 1950. The road was black topped. It was a clear day and the visibility was good, but there was snow and slush on the road to a depth of from 4 to 6 inches. He was driving in a southerly direction at a speed of 20 to 25 miles per hour, and was in his lane or on the west side of the highway. At a distance of from 400 to 500 feet he saw a car coming towards him in a northerly direction at a very high rate of speed. This car (defendant's car) began to swerve and then its front end

got off the shoulder and the driver was trying to cramp his wheels to get back on the pavement and his car began to come down the road or pavement crosswise. Plaintiff then turned his car off to the side of the road as far as he could go on the shoulder. He was practically at a dead stop when he was hit by the on-coming car driven by the defendant. Defendant's car struck plaintiff's car on its left front and along the whole left side, that is the defendant's car struck the plaintiff's car broadside when the collision took place. The left wheel of plaintiff's car was right on the west shoulder and off the pavement. Plaintiff further testified that as a result of the collision he was momentarily knocked out. When he regained consciousness the defendant's car or taxicab had come to a stop on the center of the road about 100 feet to the north of where plaintiff's car was after the collision. That after the collision the defendant Lloyd Markham came to plaintiff's car and said that he was very sorry, that it was his fault and that he was going too fast and lost control of his car. With reference to the damage to his car plaintiff stated that the bumper was broken off, the front wheel assembly, the steering gear, and brakes were broken and bent out of shape. The car was wrecked to such an extent that it could not be driven. The fenders and the hood, the windshield, the left door, the door posts were smashed. The frame was bent and sprung. He had the car repaired at the Universal Motors at a cost of $687.74. His car was a two door Ford coach purchased in the fall of 1949. Over objection by the defendants he testified that before the collision his car was worth $1,800 and that after the collision and before it was repaired it was worth $450; that after the car had been repaired it was worth $1,200. He testified that he was a salesman for Sears Roebuck and used his car in his business; that he was without a car from May 4th the date of the accident to June 15th and that he hired a car from the Universal Motor Company at $6 per day or a total of $258. Because of his injuries which resulted from the collision he was unable to work for three days at a loss to him of $15 per day or a total of $45; that he paid a

drug bill in the sum of $13. On cross-examination the plaintiff testified that he carried collision insurance with $50 deductible and that the insurance company paid him $638 which was $50 less than the total cost of repairs.

E. L. Overland testifying for the plaintiff said that he was general sales manager for the Universal Motors at Bismarck; that he was acquainted with the plaintiff and that he sold him the Ford automobile involved here on October 23, 1949; that it was a 1949 Ford two door six cylinder; that the price paid for it by the plaintiff was $1,929, which was the usual and customary price of that kind of automobile at that time. He stated that he was familiar with and knew the plaintiff's car on or about the 4th day of May 1950 before it was damaged in the collision and that it was in perfect condition. He made a thorough examination of the automobile after the collision and stated that it was "badly bent up". The estimate of the repairs necessary for plaintiff's car was made by the service manager of the Universal Motor Company under his supervision. He watched the car as it was torn down. He stated the value of the car immediately before the collision was approximately $1,800; that after the collision it was worth $450, that is before it was repaired; that after the car was repaired it was worth from $1,200 to $1,300. On cross-examination by defendants' counsel he testified that he had been in the automobile business 24 years; that he was a service mechanic about 14 years; and that he had been a salesman the last six or seven years.

George Zent testifying for the plaintiff stated that he was a resident of Bismarck and that he was a traffic sergeant in the Bismarck Police Department; that he was called out to the scene of accident May 4, 1950 on the air port road and that he rode out with one Jercant Feltcli. He stated that this road was straight and had black top surface; that there was slush on the highway four inches deep or better but the visibility was clear; that the plaintiff's car was sitting off on the side in the ditch which is referred to as the "borrow pit" and was completely off the pavement and off the road; he saw that the plaintiff's car was damaged but could not tell how much except that the left front and left side were damaged; he observed the tracks of the rear wheels of the plaintiff's car and that they ran from the point of accident off to the side then "angled" off into the borrow pit and that those tracks were on the right or west shoulder of the highway; he also observed the car driven by the defendant Lloyd Markham and that it was in the center of the highway about 50 feet back from the point of collision. He was asked the following questions by plaintiff's counsel.

"Q. Did you observe auto tracks made in the snow by the cab? A. Yes Sir.

"Q. Now starting from the point at which the accident occurred where did those tracks run, that were made by the cab? A. Well, looking southward on the highway they came off the shoulder that is the east shoulder of the highway, then there was some plowed slush marks in the snow and they run approximately 50 feet to where the impact occurred.

"Q. Across the center line? A. Yes, Sir."

A power of attorney executed by National Farmers Union Property and Casualty Company, formerly National Farmers Union Automobile and Casualty Company which had insured plaintiff's car against collision, dated Nov. 21, 1951 was introduced in evidence as plaintiff's exhibit 3. Among other things this power of attorney contained the following provisions:

"That with its knowledge and consent, R. W. Hermes began an action in the District Court in and for Burleigh County, North Dakota, on or about the 16th day of June 1950 against Lloyd Markham and City Cab Company, a corporation, Defendants, to recover the damages suffered by R. W. Hermes in said collision including the sum of $637.74 advanced and paid by it to R. W. Hermes;

"That the said National Farmers Union Property and Casualty Company does hereby ratify and confirm in all things the ac-

tion brought by R. W. Hermes in his name to recover for all damages suffered in said action including any claim that it may have in said recovery; and it does hereby authorize and empower said R. W. Hermes to carry on and continue to final judgment or to compromise the above entitled action and to represent any and all claims, demands for damages or interest in said action that it may have under said settlement and subrogation agreement, and to do any and all things necessary to the maintenance of said action, and if necessary, to meet any objections of the Defendants in said action that said R. W. Hermes is not the real party in interest or not the proper person to maintain said action; that he is authorized to forthwith enter its appearance in said action as a party Plaintiff, if necessary, with the same full force and effect as if said action had been previously brought by it in the district court to recover for said damages either alone or jointly with R. W. Hermes and to be bound by any judgment entered in said action."

The defendant Lloyd Markham testifying for the defendants stated:

That on the forenoon of May 4, 1950 he had taken a passenger to Fort Lincoln on the air port road and was returning to Bismarck driving north on said highway; that there were four to six inches of snow on the highway. He saw two cars driving south towards him, the first car being from 50 to 60 feet ahead of the second car; he was driving on the east side of the highway and as he passed the first car it splashed snow and slush on the left side of his windshield but the east side of the windshield was clear; because of the slush on his left windshield he kept close to the east edge of the road; directly behind the first car that threw the slush on his windshield he saw the second car; he was working his brakes, pumping them slowly so that he could slow down from the speed he was going; while he was working his brakes he was hit by the plaintiff's car.

The cab that he was driving was a 1948 Plymouth four door. As to the damage to the cab he stated that the left fender, left head light and the whole left side were smashed. The door on the driver's side was smashed so badly that he could not open it to get out. He denied that he told the plaintiff that he, the defendant, was to blame for the accident. On cross-examination he admitted that he saw the plaintiff's car from the time it first came into view and up to the point of collision; he could not remember that he turned the wheels of his car to get back upon the pavement.

Mac L. Flynn testifying for the defendant stated that at the time of the accident he was the owner of a one-half interest in the plaintiff City Cab Company, and that the cab involved in the accident was a 1948 Plymouth; that it was purchased in the latter part of 1948 and that immediately before the accident it was worth $1,300; and that after the accident and before it was repaired the cab was worth $400.

The defendants introduced in evidence defendants' exhibit A, a document designated "proof of loss" which appears to be a statement of a claim of the plaintiff under his policy with the Insurance Company, from which it appears that the cost of repairs of plaintiff's car was $687.74 from which $50 was deductible and that the amount paid to the plaintiff was $637.74. Exhibit A contained among other things the following provisions:

"The Insured hereby assigns, transfers, and sets over to the Insurer any and all claims or causes of action of whatsoever kind and nature which the Insured now has, or may hereafter have, to recover against any person or persons as the result of said occurrence and loss above described, to the extent of the payment above made; the Insured agrees that the Insurer may enforce the same in such manner as shall be necessary or appropriate for the use and benefit of the Insurer, either in its own name or in the name of the Insured; that the Insured will furnish such papers, information, or evidence as shall be within the Insured's possession or control for the purpose of enforcing such claim, demand, or cause of action."

The case was submitted to the jury and a verdict was returned in favor of the plaintiff in the sum of $1,350. Thereafter the defendants made a motion for a new trial. The motion was denied and the defendants appealed from the order denying the motion for a new trial and from the judgment.

Appellants assigned numerous errors, all of which may be considered under four heads;

1. That the plaintiff is not the real party in interest.

2. Errors committed by the trial court in the admission and exclusion of the testimony.

3. Errors in the instructions to the jury.

4. Insufficiency of the evidence to warrant a verdict against the defendant.

We shall consider these assignments in the order stated.

The defendants contend that under the provisions of the assignment and subrogation clause contained in the proof of loss, the defendants' exhibit A, the insurance company and not the plaintiff was the real party in interest. This clause provides that the insured hereby assigns, transfers, and sets over to the insurer any and all claims or causes of action of whatever kind or nature which the insured now has or may hereafter have, to recover against any person or persons as the result of the said occurrence and loss above described. Thereafter the plaintiff brought the present action in his own name as plaintiff against these defendants. However before the action was tried the insurance company executed and delivered to the plaintiff a power of attorney, plaintiff's exhibit 3, the pertinent parts of which we have quoted herein. This instrument vests in the plaintiff complete authority to bring the action and ratifies and confirms in all things the action brought by the plaintiff. It further provides that plaintiff is authorized forthwith to enter its appearance in said action as a party plaintiff, if necessary, with the same full force and effect as if the said action had been previously brought by it in the district court to recover damages either alone or jointly with the plaintiff, and it agrees to be bound by any judgment entered in said action.

In the case of Bowe v. Gress Lumber Co., 86 Ga. 17, 12 S.E. 177, 178, the action was brought by one A. B. Steele as plaintiff. At the trial objection was made by the defendant that the plaintiff was not the real party in interest and that the Gress Lumber Co. was in fact the plaintiff. The plaintiff then obtained leave to amend so as to include the Gress Lumber Co. as plaintiff. The defendant appealed. In the opinion the Supreme Court of Georgia said:

"It is manifest that the corporation was the plaintiff in the action from the beginning; hence that portion of the amendment making it a party was superfluous. All that was needed was for the company to ratify the action, and allow it to proceed, which was done by the president of the company, who appeared in open court for the purpose. The ratification related back to the commencement of the action, and gave as much authority for the use of the corporate name by Steele as if he had obtained permission to use the name for his benefit before instituting the action. This is the general rule as to the effect of ratification."

"An action instituted by one person without the authority of the real plaintiff may be ratified and adopted by the latter, while the action is pending, and such ratification will relate back to the commencement of the action. This may be done after a motion to dismiss has been made, but not after an actual dismissal." 1 C.J.S., Actions, § 29, page 1073.

Clearly under the terms of the power of attorney the plaintiff was a real party in interest and was authorized to litigate any and all claims which the insurance company might have under the subrogation agreement and settlement with the plaintiff; and a judgment obtained by the plaintiff is an effectual bar to any claim or action by the insurance company against the defendants.

■ Over objection by defendants the plaintiff testified that his automobile was worth $1,800 before the collision, that it was worth $450 after the collision and before repairs were made, and that it was worth $1,200 after it had been repaired. This testimony was fully corroborated by the witness Overland who was the person who had sold the automobile to the plaintiff. He had fourteen years experience as a service mechanic and had six or seven years experience as a salesman.

With reference to this testimony the trial court instructed the jury as follows:

"Now with respect to damages, if after repairs are made with due diligence, care and skill, the market value of the car is less than its market value before the accident, the measure of damages for injuries to the car is the reasonable cost of repairs, plus the difference between such value." (values)

The defendants took exception to this instruction as an erroneous statement of the measure of damages. We hold, however, that the instruction was correct and that the testimony objected to was clearly admissible.

The general rule as to the measure of damages in such cases is stated in Part I of Vol. 6, Blashfield Automobile Law & Practice, pages 44, 45 and 47, Section 3415, as follows:

"The general rule is that the measure of damages for injury to personalty by the wrong of another is the difference between the value of the property before and after the injury, the value meant being the market value, if there is one.

"Therefore the general rule for the measurement of damages to an automobile by an injury to it, where the machine is only partially destroyed, is the difference between the reasonable market value of the automobile immediately before the injury and its fair market value immediately after such injury.

"This general rule, without qualifications, only applies if the repairs will make the damaged vehicle as good as new.

"Otherwise expressed, the measure of damages where a motor vehicle is only partially destroyed through the fault of another, is the reasonable replacement cost and repairs, plus the difference in value before and after repairs only if the latter is less."

In the case of Schevers v. American Ry. Express Co., 195 Iowa 423, 192 N.W. 255, 256, the plaintiff brought action for damages to his car in a collision resulting from the negligence of the defendant. Several witnesses were permitted to testify, over objection by the defendant as to the value of the car immediately before and immediately after the collision. The Supreme Court held that the testimony was admissible. We quote from the opinion.

"After describing the condition of the car, several witnesses were permitted, over the objection of appellant, to testify to its value immediately before and immediately after the collision. Appellee tried the case below upon the theory that the injuries to the car were of such a character that it could not be repaired, that a new box was required, and that it was so put out of alignment that it has not since worked well, and many other results of the accident are proven. The evidence was clearly admissible."

And in Restatement of Torts, Section 928, the rule adopted reads as follows:

"Where a person is entitled to a judgment for harm to chattels not amounting to a total destruction in value, the damages include compensation for

"(a) the difference between the value of the chattel before the harm and the value after the harm or, at the plaintiff's election, the reasonable cost of repair or restoration where feasible, with due allowance for any difference between the original value and the value after repairs, and

"(b) the loss of use."

■ The plaintiff claimed that because of personal injuries sustained in the collision he was unable to work for three days.

On direct examination he testified as follows:

"Q. How much in wages or in compensation did you lose for the three days that you were out of work?

"By Mr. Murray: Just a moment. Objected to as irrelevant and immaterial and a conclusion and not a proper measure of damages and no foundation laid.

"By The Court: Overruled.

"A. Forty-five dollars.

"Mr. Murray: Move to strike out the answer of the witness on all of the grounds in support of the objection.

"By the Court: Motion denied."

The motion to strike the answer was not well taken. The plaintiff was qualified and had the right to testify as to the compensation he was receiving for his services. He was not cross-examined in regard thereto and his testimony as to his compensation is uncontradicted. The refusal of the trial court to strike this testimony was correct.

■ With reference to the loss of the use of his car during the time it was being repaired plaintiff testified as follows on direct examination.

"Q. Now, how long was it, from May 4th until your car was repaired sufficiently that you could drive and use it again?

"By Mr. Murray: Just a minute. Object to that as no foundation laid. The matter he seeks is not any element of any measure of damages. Involves a conclusion and a lot of factors and there is no foundation laid for that type of testimony here.

"By The Court: Overruled.

"Q. How long were you without the use of your automobile following the collision on May 4th?

"By Mr. Murray: Just a moment. Same objection, same grounds.

"By The Court: Overruled.

"A. To June 15th.

"Q. Do you use your car in your business? A. Yes, I do.

"Q. In what way? A. I am a salesman.

"Q. What did you do for transportation in connection with your business from May 4th to June 15th?

"By Mr. Murray: Objected to as immaterial and irrelevant. Not a proper measure of damages, not going to establish any legal measure of damages. There is no foundation laid for this type of testimony in the record.

"By The Court: Overruled.

"A. I rented a car from Universal Motors.

"Q. What was the rental rate per day. Did you rent that automobile?

"By Mr. Murray: Just a moment. I object to that on the same grounds and in any event not a measure of damages what he had to pay somebody else.

"By The Court: Overruled.

"Six dollars a day."

The testimony of the plaintiff in this respect was merely a statement that he rented the car from Universal Motors and that he paid $6 per day. There is no evidence that the rental paid by the plaintiff was reasonable or that it was the usual rental commonly paid in the community. The rental value of cars is not within the general field of knowledge of a jury, and under the state of the evidence in the instant case the question of reasonability of the rental paid by the plaintiff would be left to conjecture and speculation.

"To entitle one to an award for the loss of the use of an injured automobile during the period of repair, he must show the time reasonably necessary for making the repairs. Jurors should not be allowed to speculate as to the value of such use, and

instructions leaving to each juror the duty of measuring the value of the use according to his own individual experience, or, if he has none, by that of his fellow jurors, are erroneous; so to warrant an instruction as to damages from loss of such use there must be evidence of its value." Part I, Vol. 6, Blashfield Cyclopedia of Automobile Law and Practice, Section 3418, pages 63 and 64.

In the case of Kohl v. Arp, 236 Iowa 31, 17 N.W.2d 824, 829, 169 A.L.R. 1067, the Supreme Court of Iowa said:

"We have already held it was not error to admit the testimony of appellee as to the value of the loss of use of his truck. There is, however, grave question of its sufficiency in the absence of more direct testimony as to rental value. He testified that the value of the loss of use was $30 per day. 'That is what the truck was worth to me at that time * * * that wouldn't be my profit.' At no time did he indicate that his estimate was of local rental value exclusive of driver and other expense, nor was there other evidence bearing on rental value or as to whether other similar equipment was locally available."

And in the case of Southern R. Co. v. Kentucky Grocery Co., 166 Ky. 94, 178 S.W. 1162, 1163, the rule is stated as follows:

"In this case, the property being an automobile truck, the criterion is the reasonable net rental value upon the market in Louisville of the truck in question, or of other trucks of like capacity and equal performance; the lessee furnishing driver and bearing all such other expenses as the owner himself would have to bear in the operation of his own car."

We hold therefore that the testimony of the plaintiff with reference to the payments made for the car rented from the Universal Motors was inadmissible under the state of this record and constitutes prejudicial error.

Finally defendants contend that the evidence is insufficient to sustain the verdict.

We have carefully examined the evidence and the entire record and we are agreed that the evidence is sufficient to warrant the jury in finding that the collision between plaintiff's car and the cab of the defendants resulted from the negligence of the defendant Lloyd Markham, the driver of the cab.

However, because of the error in the admission of testimony pointed out herein, which goes solely to the amount of damages, a new trial should be granted unless the plaintiff agrees to remit the maximum amount the jury could have allowed for the loss of the use of his car, namely the sum of $258. Such retrial should be limited solely to the question of the amount of damages sustained by the plaintiff.

"The power of an appellate court in granting a new trial, where the error in the court below affects only some of the issues, to limit the new trial to the issues affected by the error has been exercised in a number of cases. The most frequent application of it is found in actions sounding in damages where the error affects only the assessment of the damages; in many cases, the new trial has been limited to that question alone." 3 Am.Jur. page 725, Appeal and Error, Sec. 1227.

An analogous question was before this court in the case of Welch Mfg. Co. v. Herbst Department Store, 53 N.D. 42, 204 N.W. 849, 854.

We quote from the opinion:

"It follows, therefore, that the trial court was correct in denying defendant's motion for judgment notwithstanding the verdict, and was also, correct in ordering a new trial on the ground that an erroneous measure of damages was adopted upon the trial. The latter, we think, was the only error prejudicial to the defendant which occurred upon the trial. This being so, we are all agreed that the new trial should be limited solely to the question of damages. Jacob-

son v. Horner, [49 N.D. 741], 193 N.W. 327; Weigel v. Powers Elevator Co., [49 N.D. 867], 194 N.W. 113."

The judgment will be reversed and a new trial granted, limited as hereinbefore set forth, unless written notice of remission of damages in the amount hereinbefore set forth is filed by the plaintiff with the Clerk of the District Court within thirty days after the return and filing of the remittitur herein.

MORRIS, C. J., and GRIMSON CHRISTIANSON, and BURKE, JJ., concur.